## BESSETTE *v.* W. B. CONKEY COMPANY.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 142. Argued April 7, 8, 1904.—Decided May 16, 1904.

A contempt proceeding is *sui generis,* in its nature criminal, yet may be resorted to in civil as well as criminal actions and also independently of any action. The purpose of contempt proceedings is to uphold the power of the court, and also to secure suitors therein the rights by it awarded. The power to punish for contempt is inherent in all courts.

Under § 6 of the Court of Appeals Act of 1891, a Circuit Court of Appeals has jurisdiction to review a judgment of the District or Circuit Court finding a person guilty of contempt for violation of its order and imposing a fine for the contempt.

If the person adjudged in contempt and fined therefor is not a party to the suit in which the order is made he can bring the matter to the Circuit Court of Appeals by writ of error but not by appeal.

THIS case is before us on questions certified by the Circuit Court of Appeals for the Seventh Circuit. The facts as stated are that on August 24, 1901, the W. B. Conkey Company filed

its bill of complaint in the Circuit Court of the United States for the District of Indiana against several parties, praying an injunction, provisional and perpetual, restraining the defendants, their confederates, agents and servants, from interfering with the operation of its printing and publishing house. A temporary restraining order was issued, and on December 3, 1901, a perpetual injunction was ordered against all the defendants appearing or served with process. On September 13, 1901, the complainant filed its verified petition, informing the court that various persons, among them Edward E. Bessette, (who was not named as a party defendant in the bill,) with knowledge of the restraining order, had violated it, describing fully the manner of the violation. Upon the filing of that petition Bessette was ordered to appear before the court and show cause why he should not be punished for contempt in violating the restraining order. He appeared and filed his answer to the charges, and upon a hearing the court found him guilty of contempt and imposed a fine of $250. From this order or judgment Bessette prayed an appeal to the Circuit Court of Appeals, which was allowed, and the record filed in that court. Upon these facts the Circuit Court of Appeals certified the following questions:

"First. Whether the Circuit Court of Appeals has jurisdiction to review an order or judgment of the Circuit Court of the United States, finding a person guilty of contempt for violation of an order of that court and imposing a fine for the contempt.

"Second. Whether the 'act to establish Circuit Courts of Appeals and to define and regulate in certain cases jurisdiction of the courts of the United States, and for other purposes,' approved March 3, 1891, (26 Stat. 826,) authorizes a review by a Circuit Court of Appeals of a judgment or order of a Circuit Court of the United States, finding a person, not a party to the suit, guilty of contempt for violation of an order of that court made in such suit, and imposing a fine for such contempt.

"Third. Whether, if such review be sanctioned by law, a person so adjudged in contempt and fined therefor, who is not a party to the suit, can bring the matter to the Circuit Court of Appeals by appeal.

"Fourth. Whether, if such review be sanctioned by law, a person so adjudged in contempt and fined therefor, who is not a party to the suit, can bring the. matter to the Circuit Court of Appeals by writ of error."

*Mr. William Velpeau Rooker* for appellant.

*Mr. Jacob Newman, Mr. Salmon O. Levinson* and *Mr. Benjamin T. Becker* for appellee.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion. of the court.

The primary question is whether the Circuit Court of Appeals can review an order of a District or Circuit Court in contempt proceedings. A secondary question is, how, if there be a right of review, can it be exercised?

A contempt proceeding is *sui generis*. It is criminal in its nature, in that the party is charged with doing something forbidden, and, if found guilty, is punished. Yet it may be resorted to in civil as well as criminal actions, and also independently of any civil or criminal action.

The power to punish for contempt is inherent in all courts. It is true Congress, by statute, (1 Stat. 83,) declared that the courts of the United States "shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." And this general power was limited by the act of March 2, 1831, 4 Stat. 487; Rev. Stat. sec. 725, the limitation being—

"That such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the

administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness or other person, to any lawful writ, process, order, rule, decree or command of the said courts."

But in respect to this it was held in *Ex parte Robinson*, 19 Wall. 505, 510:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2, 1831. The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Circuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted."

The purpose of contempt proceedings is to uphold the power of the court and also to secure to suitors therein the rights by it awarded. As said in *In re Chiles*, 22 Wall. 157, 168:

"The exercise of this power has a two-fold aspect, namely: first, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform."

In *In re Nevitt*, 54 C. C. A. 622, 632; 117 Fed. Rep. 448, 458, Judge Sanborn, of the Court of Appeals for the Eighth Circuit,

considered the nature of contempt proceedings at some length. We quote the following from his opinion:

"Proceedings for contempts are of two classes, those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. *Thompson* v. *Railroad Co.,* 48 N. J. Eq. 105, 108; 21 Atl. Rep. 182; *Hendryx* v. *Fitzpatrick,* [C. C.] 19 Fed. Rep. 810; *Ex parte Culliford,* 8 Barn. & C. 220; *Rex* v. *Edwards,* 9 Barn. & C. 652; *People* v. *Court of Oyer and Terminer,* 101 N. Y. 245, 247; 4 N. E. Rep. 259; 54 Am. Rep. 691; *Phillips* v. *Welch,* 11 Nevada, 187, 190; *State* v. *Knight,* 3 S. Dak. 509, 513; 54 N. W. Rep. 412; 44 Am. St. Rep. 809; *People* v. *McKane,* 78 Hun, 154, 160; 28 N. Y. Supp. 981; 4 Bl. Comm. 285; 7 Am. & Eng. Ency. Law, 68. A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings." See also Rapalje on Contempts, sec. 21.

Doubtless the distinction referred to in this quotation is the

cause of the difference in the rulings of various state courts as to the right of review. Manifestly if one inside of a court room disturbs the order of proceedings, or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court, yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature. On the other hand, if in the progress of a suit a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt proceeding. The punishment is to secure to the adverse party the right which the court has awarded to him. He is the one primarily interested, and if it should turn out on appeal from the final decree in the case that the original order was erroneous, there would in most cases be great propriety in setting aside the punishment which was imposed for disobeying an order to which the adverse party was not entitled.

It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determinative feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party.

In the case at bar the controversy between the parties to the suit was settled by final decree and from that decree, so far as appears, no appeal was taken. An appeal from it would not have brought up the proceeding against the petitioner, for he was not a party to the suit. Yet being no party to the suit he was found guilty of an act in resistance of the order

of the court.   His case, therefore, comes more fully within the
punitive than the remedial class.   It should be regarded like
misconduct in a court room or disobedience of a subpœna, as
among those acts primarily directed against the power of the
court, and in that view of the case we pass to a consideration
of the questions presented.

In *In re Debs*, 158 U. S. 564, a case of *habeas corpus* brought
to review an order of the Circuit Court imprisoning for con-
tempt, we said (p. 596):

"In brief, a court enforcing obedience to its orders by pro-
ceedings for contempt is not executing the criminal laws of
the land, but only securing to suitors the rights which it has
adjudged them entitled to."

And again, in summing up our conclusions (p. 599):

"That the proceeding by injunction is of a civil character
and may be enforced by proceedings in contempt; that such
proceedings are not in execution of the criminal laws of the
land; that the penalty for a violation of injunction is no sub-
stitute for and no defence to a prosecution for any criminal
offences committed in the course of such violation."

At common law it was undoubted that no court reviewed
the proceedings of another court in contempt matters.   In
*Crosby's Case*, 3 Wils. 188, Mr. Justice Blackstone said:

"The sole adjudication of contempts, and the punishment
thereof, in any manner, belongs exclusively, and without in-
terfering, to each respective court."

In the case of *Ex parte Yates*, 4 Johns. 318, 369, Chief Jus-
tice Kent, after reviewing the English cases and referring to
the case of *The Earl of Shaftsbury*, 1 Mod. 144, concluded as
follows:

"The court, in that case, seem to have laid down a principle
from which they never have departed, and which is essential
to the due administration of justice.   This principle, that every
court, at least of the superior kind, in which great confidence
is placed, must be the sole judge, in the last resort, of con-
tempts arising therein, is more explicitly defined and more

emphatically enforced in the two subsequent cases of the *Queen* v. *Paty and others*, and of the *King* v. *Crosby*."

Without stopping to notice the decisions of the courts of the several States, whose decisions are more or less influenced by the statutes of those States, we turn to an examination of the rulings of this court in respect to the finality of contempt proceedings.

In *Ex parte Kearney*, 7 Wheat. 38, a writ of *habeas corpus* was issued by this court in behalf of a party committed to jail by the Circuit Court of the District of Columbia for contempt in refusing to answer a question put to him on a trial. The application for a discharge was refused. The reasons therefor are disclosed by the following quotations from the opinion delivered by Mr. Justice Story (p. 42):

"It is to be considered that this court has no appellate jurisdiction confided to it in criminal cases, by the laws of the United States. It cannot entertain a writ of error, to revise the judgment of the Circuit Court, in any case where a party has been convicted of a public offence. . . . If, then, this court cannot directly revise a judgment of the Circuit Court in a criminal case, what reason is there to suppose that it was intended to vest it with the authority to do it indirectly? . . . If this were an application for a *habeas corpus*, after judgment on an indictment for an offence within the jurisdiction of the Circuit Court, it could hardly be maintained that this court could revise such a judgment, or the proceedings which led to it, or set it aside and discharge the prisoner. There is, in principle, no distinction between that case and the present; for when a court commits a party for a contempt, their adjudication is a conviction, and their commitment, in consequence, is execution; and so the law was settled, upon full deliberation, in the case of *Brass Crosby, Lord Mayor of London*, 3 Wilson, 188."

*New Orleans* v. *Steamship Company*, 20 Wall. 387, was a suit by the company in the Circuit Court of the United States for an injunction restraining the city from interfering with its

possession of certain premises. Pending this suit the mayor of the city applied to a state court for an injunction restraining the company from rebuilding an inclosure of the premises which the city had destroyed, and the injunction was granted. At this time the city was the only party defendant in the Circuit Court, although service upon it had been made by delivering process to the mayor. Subsequently the mayor was made a party defendant by a supplemental bill. A final decree was entered against the defendants, and, as a part thereof, was an order adjudging the mayor guilty of contempt in suing out the injunction in the state court and imposing a fine therefor. Thereupon the case was brought to this court, and among other things the validity of the punishment for contempt was challenged, in respect to which we said (p. 392):

"The fine of three hundred dollars imposed upon the mayor is beyond our jurisdiction. Contempt of court is a specific criminal offence. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion."

*Hayes* v. *Fischer*, 102 U. S. 121, was a suit in equity to restrain the use of a patented device. An interlocutory injunction was granted. The defendant was fined for contempt in violating this injunction, and the entire amount of the fine ordered to be paid over to the plaintiff in reimbursement. To reverse this order defendant sued out a writ of error. A motion to dismiss was sustained, Mr. Chief Justice Waite saying for the court (p. 122):

"If the order complained of is to be treated as part of what was done in the original suit, it cannot be brought here for review by writ of error. Errors in equity suits can only be corrected in this court on appeal, and that after a final decree. This order, if part of the proceedings in the suit, was interlocutory only.

"If the proceeding below, being for contempt, was independent of and separate from the original suit, it cannot be reëxamined here either by writ of error or appeal. This was decided more than fifty years ago in *Ex parte Kearney*, (7 Wheat. 38,) and the rule then established was followed as late as *New Orleans* v. *Steamship Company*, 20 Wall. 387. It follows that we have no jurisdiction."

In *Ex parte Fisk*, a case of *habeas corpus*, 113 U. S. 713, 718, Mr. Justice Miller, speaking for the court, declared:

"There can be no doubt of the proposition, that the exercise of the power of punishment for contempt of their orders by courts of general jurisdiction is not subject to review by writ of error or appeal to this court. Nor is there, in the system of Federal jurisprudence, any relief against such orders, when the court has authority to make them, except through the court making the order, or possibly by the exercise of the pardoning power.

"This principle has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors."

In *Worden* v. *Searls*, 121 U. S. 14, a final decree was entered in a suit for infringement of a patent, in favor of the plaintiff, and from that decree the defendants appealed. A preliminary injunction had been granted, and prior to the final decree the defendants were adjudged guilty of a contempt in violating it, and ordered to pay to the complainant the sum of $250 as a fine therefor, together with the costs of the contempt proceedings. This court was of opinion that the decree in favor of the plaintiff was erroneous, and reversed it; and in addition to directing a dismissal of the bill, set aside the order imposing the fines in the contempt proceedings, saying in respect thereto (p. 25):

"We have jurisdiction to review the final decree in the suit and all interlocutory decrees and orders. These fines were

directed to be paid to the plaintiff.   We say nothing as to the lawfulness or propriety of this direction.   But the fines were, in fact, measured by the damages the plaintiff had sustained and the expenses he had incurred.   They were incidents of his claims in the suit.   His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent."

But, while setting aside the orders imposing the fines, it was "without prejudice to the power and right of the Circuit Court to punish the contempt referred to in those orders by a proper proceeding."

Again, in *In re Chetwood*, an application for prohibition, 165 U. S. 443, 462, is this ruling:

"Judgments in proceedings in contempt are not reviewable here on appeal or error, *Hayes* v. *Fischer,* 102 U. S. 121; *In re Debs*, 158 U. S. 564, 573; 159 U. S. 251; but they may be reached by certiorari in the absence of any other adequate remedy.   The writ of certiorari will be allowed to bring up the record, so that the order adjudging Chetwood and his counsel in contempt for being concerned in suing out the writs of error and directing them, or either of them, to refrain from prosecuting the one writ in the name of the bank, and to dismiss the other, may be revised and annulled."

In *O'Neal* v. *United States*, 190 U. S. 36, in which an order of the District Court punishing for contempt was brought here on writ of error, we said (p. 38):

"While proceedings in contempt may be said to be *sui generis*, the present judgment is in effect a judgment in a criminal case, over which this court has no jurisdiction on error.   Sec. 5, act of March 3, 1891, 26 Stat. 826, c. 517, as amended by the act of January 20, 1897, 29 Stat. 492, c. 68; *Chetwood's Case*, 165 U. S. 443, 462; *Tinsley* v. *Anderson*, 171 U. S. 101, 105; *Cary Manufacturing Company* v. *Acme Flexible Clasp Company*, 187 U. S. 427, 428."

In *In re Watts and Sachs*, 190 U. S. 1, the petitioners having been found guilty of a contempt of court by the District Court

of Indiana, applied for a writ of *habeas corpus.* We issued
with that writ a certiorari and brought the entire record to
this court, and upon the evidence discharged the petitioners.

From these decisions it is apparent that the uniform ruling
of this court has been against the right to review the decisions
of the lower court in contempt proceedings by writ of error,
or by appeal, except in cases of purely remedial and inter-
locutory orders. Yet we have issued certioraries in aid of
*habeas corpus* proceedings and applications for prohibition by
which the facts in the contempt case have been brought before
us, and then we have passed upon the merits of the decision
in the lower court.

The thought underlying the denial by this court of the right
of review by writ of error or appeal has not been that there
was something in contempt proceedings which rendered them
not properly open to review, but that they were of a criminal
nature and no provision had been made for a review of crimi-
nal cases. This was true in England as here. In that coun-
try, as is well known, there was no review of criminal cases
by appeal or writ of error. Neither was there in our Federal
system prior to the act of February 6, 1889, 25 Stat. 656,
which provided for a writ of error from this court in capital
cases. While the act creating the Court of Appeals, March 3,
1891, 26 Stat. 826, authorized a review of criminal cases, yet
it limited the jurisdiction of this court to cases of a conviction
for a capital or otherwise infamous crime—since limited to
capital cases—(29 Stat. 492,) and gave the right of review
of all other criminal cases to the Circuit Courts of Appeal, and;
of course, a proceeding in contempt cannot be considered as
an infamous crime. *Habeas corpus* is not treated as a writ of
error, and while it may be issued by one court to inquire into
the action of a court of coördinate jurisdiction, yet the inquiry
is only whether the action of the court in imposing punish-
ment was within its jurisdiction. Even in an appellate court
the writ of *habeas corpus* is not of itself the equivalent of a
writ of error, although when supplemented by certiorari, as

shown in the case of *In re Watts and Sachs, supra*, it may bring the whole case before the appellate court for review.

The act of March 3, 1891, establishing Circuit Courts of Appeals must now be more fully considered. While its primary purpose was the relief of this court by the creation of new appellate courts and the distribution between those courts and this of the entire appellate jurisdiction of the United States, *The Paquette Habana*, 175 U. S. 677, 681, and cases cited, yet it also enlarged the area of appellate jurisdiction. As originally passed it gave to this court jurisdiction over cases of infamous crimes in addition to that which it theretofore had in capital cases. By section 6 it gave to the Circuit Courts of Appeals appellate jurisdiction to review by appeal or writ of error final decisions in the District Court and the existing Circuit Courts in all cases other than those provided for in the preceding section. That this was intended to include criminal cases is evident from a subsequent clause, which makes the decision of the Courts of Appeals final "in all cases arising . . . under the criminal laws." See *United States* v. *Rider*, 163 U. S. 132, 138, in which, referring to sections 5 and 6, we said:

"Thus appellate jurisdiction was given in all criminal cases by writ of error either from this court or from the Circuit Courts of Appeals."

As, therefore, the ground upon which a review by this court of a final decision in contempt cases was denied no longer exists, the decisions themselves cease to have controlling authority, and whether the Circuit Courts of Appeals have authority to review proceedings in contempt in the District and Circuit Courts depends upon the question whether such proceedings are criminal cases. That they are criminal in their nature has been constantly affirmed.

The orders imposing punishment are final. Why, then, should they not be reviewed as final decisions in other criminal cases? It is true they are peculiar in some respects, rightfully styled *sui generis*. They are triable only by the court against

whose authority the contempts are charged. No jury passes
upon the facts; no other court inquires into the charge. *Ex
parte Tillinghast*, 4 Pet. 108. As said by Mr. Justice Miller,
speaking for the court, in *Eilenbecker* v. *Plymouth County*, 134
U. S. 31, 36:

"If it has ever been understood that proceedings according
to the common law for contempt of court have been subject
to the right of trial by jury, we have been unable to find any
instance of it. It has always been one of the attributes—one
of the powers necessarily incident to a court of justice—that
it should have this power of vindicating its dignity, of en-
forcing its orders, of protecting itself from insult, without the
necessity of calling upon a jury to assist it in the exercise of
this power."

See also *In re Debs, supra*, in which we said (p. 594):

"But the power of a court to make an order carries with it
the equal power to punish for a disobedience of that order,
and the inquiry as to the question of disobedience has been,
from time immemorial, the special function of the court.
And this is no technical rule. In order that a court may
compel obedience to his orders, it must have the right to in-
quire whether there has been any disobedience thereof. To
submit the question of disobedience to another tribunal, be
it a jury or another court, would operate to deprive the pro-
ceeding of half its efficiency."

But the mode of trial does not change the nature of the pro-
ceeding or take away the finality of the decision. So when,
by section 6 of the Courts of Appeals act, the Circuit Courts
of Appeals are given jurisdiction to review the "final decision
in the District Court and the existing Circuit Courts in all
cases other than those provided for in the preceding section
of this act, unless otherwise provided by law," and the pre-
ceding section gives to this court jurisdiction to review con-
victions in only capital or otherwise infamous crimes, and no
other provision is found in the statutes for a review of the final
order in contempt cases, upon what satisfactory ground can

it be held that the final decisions in contempt cases in the Circuit or District Courts are not subject to review by the Circuit Courts of Appeals? Considering only such cases of contempt as the present—that is, cases in which the proceedings are against one not a party to the suit, and cannot be regarded as interlocutory—we are of opinion that there is a right of review in the Circuit Court of Appeals. Such review must, according to the settled law of this court, be by writ of error. *Walker* v. *Dreville*, 12 Wall. 440; *Deland* v. *Platte County*, 155 U. S. 221; *Bucklin* v. *United States*, 159 U. S. 680. On such a writ only matters of law are considered. The decision of the trial tribunal, court or jury, deciding the facts, is conclusive as to them.

We, therefore, answer the questions in this way: The second and fourth in the affirmative, the third in the negative. It is unnecessary to answer the first.