BUTTE & BOSTON CONSOLIDATED MINING CO. v. MONTANA ORE
PURCHASING CO. et al.

(Circuit Court, D. Montana. December 9, 1907.)

No. 70.

FINES—CRIMINAL CONTEMPT—POWER OF COURT TO REMIT.

A person who is adjudged guilty of a contempt by a court of the United
States in willfully violating an injunction order of the court entered in a
suit to which he was not a party stands as one who has been found guilty
of an offense against the United States, and a fine imposed as a punish-
ment therefor goes to the United States; and, where such person has paid
the fine and has taken no steps for a review of the punishment, the court
is without jurisdiction, at least after the term has passed, to remit such
fine.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fines, §§ 19, 23.]

Carl Rasch, U. S. Atty.

C. R. Leonard and M. S. Gunn, for petitioners A. F. Heinze, Al-
fred Frank, and J. H. Trerise.

HUNT, District Judge. Upon petition for the return of fines paid
upon judgments holding petitioners guilty of contempt.

On March 30, 1904, in the Circuit Court of the United States, sit-
ting at Butte, Hon. James H. Beatty presiding, petitioners, F. Augustus
Heinze, Alfred Frank, and Josiah H. Trerise, were adjudged guilty
of a contempt of said court in having willfully violated an injunction
issued by the court on June 1, 1898, enjoining the Montana Ore Pur-
chasing Company, Chile Gold Mining Company, John MacGinniss,
Edward L. Whitmore, and Carlos Warfield, defendants in an action
wherein the Butte & Boston Consolidated Mining Company was com-
plainant, from mining or extracting any ore from within the limits
of the Michael Devitt lode claim. The order adjudging the petitioner
F. Augustus Heinze guilty is as follows:

"This matter came on for hearing upon the affidavit of H. V. Winchell,
filed in this cause, charging the Montana Ore Purchasing Company, Johns-
town Mining Company, F. Augustus Heinze, Josiah H. Trerise, Alfred Frank
and Carlos Warfield with contempt in having violated and refused to obey a
certain order of the above named court made and entered in the above en-
titled action on the first day of June, 1898, enjoining and restraining the Mon-
tana Ore Purchasing Company, Chile Gold Mining Company, John MacGin-
niss, Edward L. Whitmore and Carlos Warfield from mining within the limits
of what is known as the Michael Devitt lode claim, described in the complain-
ant's bill of complaint, and fully set forth in said injunction order.

"On the 22d day of March, 1904, all of the parties charged with contempt
as aforesaid appeared in response to an order to show cause why they, and
each of them, should not be committed for contempt in violating the said in-.
junction and by mining on what is known as the 'enargite vein' within the
Michael Devitt lode claim, and each of said parties entered a plea of not
guilty to the charges contained in said affidavit. Thereupon the court pro-
ceeded to the hearing of testimony touching the said charges of contempt,
and, after hearing the testimony and argument of counsel, on the 30th day of
March, 1904, made and entered its judgment and decision, to the effect that
the defendant Carlos Warfield was not guilty of the contempt charged in
said affidavit, and that the said Montana Ore Purchasing Company, Johns-
town Mining Company, F. Augustus Heinze, Alfred Frank, and Josiah H.
Trerise were each and all guilty of contempt of this court in violating the

said injunction as charged in the affidavit of the said H. V. Winchell, and that the said contempts were committed with full knowledge of the facts that the said injunction was being violated, and that the said violation was willful and without excuse.

"It is therefore ordered and adjudged that the said defendant F. Augustus Heinze is guilty of the contempt of this court, as aforesaid, in violating the said order as hereinbefore set forth, and that, as a punishment therefor, he is hereby fined in the sum of twenty thousand dollars ($20,000), and that he shall deposit, or cause to be deposited, the said sum of twenty thousand dollars ($20,000) so assessed against him in the First National Bank of Butte, Mont., on or before 11 o'clock a. m. of Thursday, the 31st day of March, 1904, to the credit of George W. Sproule, clerk of this court, to be hereafter disposed of only by the order of this court or the judge thereof; and that, if he shall fail to comply with this order in so depositing the assessed fine, he shall be taken in custody by the United States marshal for the district of Montana, and confined in the county jail at Helena, in the county of Lewis and Clark, state of Montana, until he has made full compliance with this order, or until the further order of this court."

Similar orders were made against the other petitioners Trerise and Frank, but the fine imposed against each was $1,000. The fines were paid, and it appears that during 1905 the suit in which the injunction order was made, and all matters connected therewith, were amicably settled, and that complainant makes no claim to the sum of $22,000 deposited in the First National Bank of Butte to the credit of the clerk of this court by petitioners herein. On the 28th day of March, 1906, petitioners filed their petition, praying for an order returning the sums paid over by them in compliance with the order of the court, which adjudged them guilty of contempt. The principal grounds upon which petitioners make their application are substantially these: That at the time of the institution of the suit in which the injunction was issued, for a violation of which said aforementioned fines were imposed, and since then up to and including the month of March, 1904, the parties to said action, their assigns, agents, officers, and representatives had been engaged in extensive litigation; that at about the time of the hearing of said contempt proceedings efforts were being made to settle such controversies; that in arriving at a decision in said contempt proceedings the judge took into consideration such efforts for an amicable adjustment of the existing differences, and, in rendering the decision, stated that it was not his desire to inflict severe punishment on any one, but, if possible, to preserve the property. That, subsequent to the entering of said orders in said contempt proceedings, actions were brought in this court and the state courts to recover the value of the ores alleged to have been extracted from the Michael Devitt claim, in violation of said injunction, and that recently said actions, as well as the suit in which said injunction was issued, had been amicably adjusted and settled and dismissed. That petitioners believe that it was the intent and purpose of the judge of this court in requiring the deposit of the amount of the fine to the credit of the clerk of the court, subject to its further order, to relieve the petitioners of a forfeiture thereof, in the event the parties to the litigation should succeed in amicably adjusting their differences, and that, in requiring the deposit of such considerable sums of money, the judge believed that the loss of the interest thereon pending the final adjustment of the liti-

gation "would be just and proper punishment to be meted out to your petitioners, and, further, had in contemplation that any further attempt to violate the said injunction would result in the entry of an order forfeiting the full sums deposited to the government of the United States."

Petitioners filed with their application an affidavit by F. H. Drake, deputy clerk of the Circuit Court of the United States, in and for the District of Montana, in which affiant says:

"That he was present in said court in the city of Butte, Mont., on the 30th day of March, 1904, when the court, Hon. James H. Beatty presiding, rendered an order adjudging F. Augustus Heinze, Josiah H. Trerise, and Alfred Frank guilty of contempt of court for violating an injunction order entered in cause No. 70 in said court, entitled 'Butte & Boston Consolidated Mining Company v. Montana Ore Purchasing Company, et al.' That the said judge, in announcing his finding in open court, stated, amongst other things, that the amount of the fines, to wit, the sum of $22,000, should be paid to the clerk of the court, to be thereafter disposed of only by the order of the court or the judge thereof. That, in the preparation by affiant of the journal entry concerning said order, he consulted the Honorable James H. Beatty, judge, with respect to the form thereof, and, in view of the remarks made by the court in rendering said order, inquired of the said judge as to whether or not the word 'fine' should be included in the order. That said judge replied that he did not see how the use of the word 'fine' could be avoided, but that it was not his intention that the money should be paid into the treasury of the United States, and that the words in the order, to wit, 'to be hereafter disposed of only by the order of this court or the judge thereof,' would retain the money in the hands of the court subject to its order. That the inference gained by affiant from the remarks made by the judge in open court and by the conversation had with him as aforesaid was and is that the court and said judge intended that the money should remain in the hands of the court to abide the later decision of the court or judge as to the final disposition thereof, and that subsequent proceedings in the suit would determine whether or not the money should be returned to the parties against whom the fines were imposed."

In June, 1907, the United States, by the United States district attorney, for the district of Montana, obtained leave to file an answer to the petition of the petitioners, and denied that it was the intent of the judge who fined the petitioners to relieve them of a forfeiture of the sums in which they were fined in the event of amicable adjustment of their legal controversies, and alleged that the contempt was with full knowledge of the facts that the injunction was being violated, and that the fines were imposed as a punishment, and that, upon payment of the amounts of the fines in satisfaction of the judgments pronounced by the court, the United States became then and there entitled to the amounts paid by the petitioners. An order was therefore asked, requiring the clerk to turn over to the United States the full amount of the fines in the same manner as other fines due and payable to the United States are disposed of.

It is to be borne in mind that these petitioners were not parties to the suit wherein the injunction order was issued by Judge Beatty. They can only be regarded as strangers, not primarily interested in securing to the defendants Montana Ore Purchasing Company, Chile Gold Mining Company, John MacGinniss, E. L. Whitmore, and Carlos Warfield any rights to which they were entitled as against the Butte & Boston Consolidated Mining Company, complainant. It was while they were in such an attitude that the court, after hearing was had,

made and entered its several orders that each was guilty of contempt, as charged, in violating the injunction, and that the contempts were committed with full knowledge of the fact that the injunction was being violated, and that the violation was willful and without excuse. Therefore it was adjudged that each was guilty of contempt in violating the order, and, as punishment therefor, each was fined. It was further ordered as to each that he should deposit the amount of his fine so assessed against him in the First National Bank of Butte, on or before a day fixed, to the credit of the clerk of the court, to be thereafter disposed of only by the order of the circuit court or the judge thereof, and that, if he failed to comply with the order in so depositing the assessed fine, he should be taken into custody by the marshal, and confined in jail until he complied with the order, or until further order of the court. The contention of the petitioners is that the fines imposed were for the benefit of, and in the nature of indemnity to, the complainant in the main suit; while the position of the government is that the court imposed a punishment, and at this time is without power to make any order refunding the moneys paid as fines. The one contention rests upon the argument that the action of the court was had to preserve and enforce the rights of the litigants in the injunction suit, and to compel obedience to the injunction order which was issued to enforce rights to which the court had found the Boston & Montana Company was entitled; while the other finds its basis in the principle that the proceeding was had to preserve the power and to vindicate the dignity of the court, and to punish for disobedience of the injunction order as for an offense.

It is unnecessary to consider at length the main distinctions which enter into the law of contempt. It is enough to recall that their existence is thoroughly well established, and to quote the clearly stated definition of them made by Judge Sanborn of the Court of Appeals of the Eighth Circuit in Nevitt's Case, 117 Fed. 448, 54 C. C. A. 622, affirmed by the Supreme Court in Bessette v. Conkey, 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997:

"Proceedings for contempts are of two classes: Those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders; and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are individuals whose private rights and remedies they were instituted to protect or enforce. * * * A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little, if any, interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

The language of the judgment of the court in the present case signifies that the principal purpose of the order was to punish for a con-

tempt, and not to protect a private right. Action was had to vindicate the authority of the court, and punish those who defied its order. Petitioners are in a very similar position to that of Bessette in Bessette v. Conkey, supra. There Bessette was adjudged guilty of contempt in having violated a restraining order in a suit to which he was not a party. The Supreme Court, speaking through Justice Brewer, said:

"In the case at bar the controversy between the parties to the suit was set- tled by final decree, and from that decree, so far as appears, no appeal was taken. An appeal from it would not have brought up the proceeding against the petitioner, for he was not a party to the suit. Yet, being no party to the suit, he was found guilty of an act in resistance of the order of the court. His case, therefore, comes more fully within the punitive than the remedial class. It should be regarded like misconduct in a courtroom or disobedience of a subpœna as among those acts primarily directed against the power of the court, and in that view of the case we pass to a consideration of the questions presented."

See, also, Christenson Engineering Co. v. Westinghouse Air Brake Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Doyle v. London Guaranty Co., 204 U. S. 599, 27 Sup. Ct. 313, 51 L. Ed. 641.

Where one is punished as for an offense in having willfully defied the power and authority of a court of the United States by knowingly disobeying an injunction order, he stands as one who has been found guilty of an offense against the United States. The court, in adjudging him guilty, acts as the instrument of the government in upholding the power of its judicial authority. One so found guilty may be ordered into the custody of the marshal of the United States. He may be imprisoned in one of its jails; or, if fined, the money which is paid goes to the United States. Petitioners, by appropriate steps, could have had the judgment holding them guilty of contempt reviewed by writ of error, as final decisions are reviewed in what are more strictly known as "criminal" cases. They took no steps, however, looking to such review, and the judgment of the circuit court stands unreversed.

Stress is laid upon that part of the judgment whereby, after deposit of the fine, the money paid in was to be thereafter disposed of only by order of the court or the judge thereof. But, as the terms of the judgment in each case expressly imposed the fine assessed as "a punishment" for having willfully and without excuse violated the injunction order, the law of its own force required the clerk of the court to deposit the money forthwith in the name and to the credit of the court. Section 995, Rev. St. U. S. 1878 [U. S. Comp. St. 1901, p. 711]. Thereafter the clerk remits the money to the treasurer. Upon what correct principle can the court at this late day consider the recollection of Mr. Drake, the deputy clerk of the court, of a conversation concerning a journal entry which he had with the judge, who had theretofore solemnly adjudged petitioners guilty of a contempt and fined them as a punishment? Surely the stability and effect of judgments upon which parties have acted cannot be disturbed upon such slight testimony as that. If it were assumed, however, for the mere sake of argument, that the affidavit were admissible under any rule, still it could not avail petitioners, for it shows that the direction of Judge Beatty to the deputy clerk to retain the word "fine" in the contemplated journal entry is not

only consistent with, but fully confirmatory of, the view that the judge had expressed what he had in his mind when he rendered his judgment, namely the imposition of a pecuniary punishment of an offense, inflicted by sentence of the court in the exercise of a penal jurisdiction. It is not necessary to go to the extent of deciding that the court was wholly without power to have modified or set aside its judgment, and to have relieved the offenders therefrom, if proper showing therefor had been made at the same term of the court where the judgment was rendered, for no such case is before the court. But where a court has found a person guilty, and punished in contempt, as for a criminal offense, by imposing fine for willful disobedience of an injunction order, and such person has paid the fine and has taken no steps toward a review of the judgment, and has even allowed the term of the court whereat the judgment was made to pass without seeking any revision of the order, or rehearing, or modification thereof, it is perfectly clear, in my opinion, that words in the judgment whereby continued control over the money when paid is attempted are invalid, and cannot be considered as of any force. They are repugnant to the law which, pursuant to the judgment of punishment, has provided for the disposition of the fines paid. No further judicial order can be made in the premises other than to enforce such prescribed disposition. I do not question the authority of a court for good cause to suspend the making of its judgment in a case of contempt, or other punishable or criminal offense, and as long as such suspension is operative, for the court to retain full control of the proceeding; but, after the rendition of its judgment by way of punishment, the case is ended and execution of the judgment can only be stayed by proper legal methods. Remission of a sentence is not within judicial authority.

In State v. Voss, 80 Iowa, 467, 45 N. W. 898, 8 L. R. A. 767, the Supreme Court of Iowa considered a question very like the one at bar. Certain persons willfully disobeyed an injunction of the court, and each was fined and ordered committed to jail for 30 days unless the fine and costs were sooner paid. In its judgment the court used this language:

"The execution of this judgment is to be suspended during the pleasure of the court, but whenever the court * * · * so directs execution and warrant of commitment are to issue. * * * "

The validity of this condition was examined. The court said:

"The condition of the judgment puts its execution wholly within the discretion of the court below, whether that discretion be exercised with or without justice or reason. If it be the pleasure of that court, process may never be issued upon the judgment. The case is this: We find a judgment for a fine against defendant, which can only be enforced at the pleasure of the court. The judgment is thus suspended, and the state is defeated of the remedy provided by law upon the exercise of the pleasure of the district court. If the power to do this exists in a case of contempt, it must exist in all cases punishable by fine and imprisonment. The law is no respecter of persons. One violator of law possesses no rights or immunities not held by another. It follows, then, that all fines and penalties prescribed by law may be collected only when it accords with the pleasure of the court in which judgment is rendered therefor. The claim of the validity of the condition of the judgment leads to the most absurd results. It is hardly necessary to say that it is based upon no statute."

To the same effect is Neal v. State, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 190.

In conclusion I hold that the judgment was a conviction of an offense against the United States, and sentence therefor; that the fine passed into the custody of the United States; that the court has no power whatever to order the money repaid to petitioners, as to do so would be the remission of a sentence for an offense against the laws of the United States. In re Mullee, Fed. Cas. No. 9,911.

Until the clerk has remitted the money as required, petitioners may seek relief under the pardoning power which is exclusive in the President; but they are without remedy in the courts.

The petition is dismissed for lack of jurisdiction.