## PINO v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. December 7, 1921.)

### No. 2929.

Intoxicating liquors ⊙279—Proceeding for contempt for violation of injunction restraining maintenance of nuisance under Prohibition Act held criminal in nature.

A judgment of contempt, imposing a fine and imprisonment for a definite term for violation of an injunction granted under National Prohibition Act, tit. 2, § 22, restraining maintenance of a common nuisance, *held* criminal in its nature and abated by the death of the defendant.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Proceeding for contempt by the United States against Cæsar Dal Pino. Defendant brings error. Dismissed.

Timothy J. Fell, of Chicago, Ill., for the motion.

C. W. Middlekauff, of Chicago, Ill., opposed.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Cæsar Dal Pino was informed against by the Attorney General of Illinois, for and on behalf of the United States, for having violated section 22 of the Volstead Act (41 Stat. 314). A finding that his place of business was conducted as a common and public nuisance was made, and an order entered abating it, and enjoining him and others from "manufacturing, selling, or bartering any intoxicating liquor, as defined in section 1, of title II, of said National Prohibition Act, or upon the premises described in the bill of complaint," etc. Subsequently he was charged with violating the restraining order, and proceeded against as for contempt of court, found guilty, fined $1,000, and sentenced to serve a year in jail. From this judgment he sued out a writ of error, and, pending its hearing, died. We are to determine the effect of his death upon the collection of the fine.

Our answer is dependent upon our determination of the character of the judgment rendered in the contempt proceedings. In other words, was the judgment rendered in a civil or a criminal contempt proceeding? If criminal, the authorities are numerous to the effect that death abates the judgment. U. S. v. Mitchell (C. C.) 163 Fed. 1014; U. S. v. Pomeroy (C. C.) 152 Fed. 279; U. S. v. Dunne, 173 Fed. 254, 97 C. C. A. 420, 19 Ann. Cas. 1145; Menken v. Atlanta, 131 U. S. 405, 9 Sup. Ct. 794, 33 L. Ed. 221; List v. Penn, 131 U. S. 396, 9 Sup. Ct. 794, 33 L. Ed. 222; Boyd v. State, 3 Okl. Cr. R. 684, 108 Pac. 431. Whether the proceedings are civil or criminal is not always a matter of easy determination.

On examining the information (set forth in full below [1]), we are

---

[1] Information for Citation for Contempt of Court.

In the District Court of the United States, Northern District of Illinois, Eastern Division.

United States of America, Complainant, v. Cæsar Dal Pino, Defendant.

In Equity No. 1643.

Information in Chancery.

The United States of America, by Edward J. Brundage, Attorney General of the state of Illinois, represents unto your honor that on the 24th day of November, 1920, your petitioner filed in this court a bill in equity charging that the defendant Cæsar Dal Pino sold intoxicating liquor as defined by the National Prohibition Law, in violation of the National Prohibition Law, in the first floor, i. e. the ground floor of the premises located at 808 West Madison street, Chicago, Cook county, Illinois, and on the 26th day of November, 1920, this court entered an order restraining the said defendant Cæsar Dal Pino from selling intoxicating liquor in said premises and restraining the defendant from maintaining a public and common nuisance on said premises, described in said bill of complaint.

Your petitioner further represents that a deputy United States marshal of this court duly served a temporary restraining order upon the said Cæsar

persuaded that the pleader, when he drew his pleadings, had no question in mind involving the distinction between civil and criminal contempt. He terms his application to the court an "Information in Chancery," and repeats the designation in the verification. We are not, however, at any place informed as to the nature and character of such a pleading. It is a nondescript term, indicative of a criminal proceeding if we stress the first word, while negativing it if emphasis be given to the word "Chancery."

The allegations in the application, as well as the relief sought and the judgment pronounced, all indicate that the proceedings were viewed by court and counsel as criminal. That the distinction between the two should at all times be kept clearly in mind is well illustrated in the case of Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, where it is stated:

"For, notwithstanding the * * * elements of similarity in procedure and in punishment, there are some differences between the two classes of proceedings which involve substantial rights and constitutional privileges. Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself. * * * There is another important difference. Proceedings for civil contempt are between the original parties and are instituted and tried as a part of the main cause. But on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause."

---

Dal Pino restraining him from violating the National Prohibition Law and maintaining a public and common nuisance as described in the National Prohibition Law, in pursuance of the temporary restraining order entered by your honor as above set forth, which said temporary restraining order, or writ of injunction was served on the said Cæsar Dal Pino on the 30th day of November, 1920.

Your petitioner further represents that on the 30th day of December, 1920, Samuel Ball visited the said premises described in the bill in equity in this cause and purchased from a person behind the saloon bar on the said premises, being the person then in control of the said described premises a drink of whisky, and the person in charge of said place and having charge of said bar, sold said drink of whisky to said Samuel Ball who paid the said bartender for said drink of whisky 100 cents per drink for said whisky. That, since said temporary restraining order was entered by this court and since the writ of injunction, as above described, was served on said defendant, that said defendant, and his agents and servants sold whisky to other persons who entered said premises and received pay for said whisky and said whisky was drunk upon the premises described in the bill in chancery in this suit.

Your petitioner, therefore, prays that a citation may issue against the said Cæsar Dal Pino defendant herein, commanding him that he appear before this court and show cause why he should not be held in contempt of this court for violating the injunction issued by the court as above set forth.

United States of America,
By Edward J. Brundage, Attorney General of Illinois.

Samuel Ball, being duly sworn, on oath says that he has read the foregoing information in chancery, subscribed United States of America, by Edward J. Brundage, Attorney General of Illinois, and knows the contents of said information in chancery, and that the facts stated in said information in chancery are true of his own knowledge. Samuel Ball.

Likewise the procedure to review the judgment differs in the two classes of proceedings. The review of a judgment of criminal contempt must be by writ of error. Bessette v. W. B. Conkey Co., 194 U. S. 324, 338, 24 Sup. Ct. 665, 48 L. Ed. 997; Garrigan v. U. S., 163 Fed. 16, 19, 89 C. C. A. 494, 23 L. R. A. (N. S.) 1295. In the present case the review is by writ of error, and acquiescence in this procedure by defendant in error furnishes some support for the conclusion that the judgment was criminal in character.

While the intention of the pleader may be considered in determining the character of these proceedings (Gompers v. Bucks Stove & Range Co., supra), and this intention may be gathered from the title of the cause, the designation of the pleading, the prayer for relief, and other helpful signs, none of them are very persuasive in the present case. For example, the title would be the same whether the proceedings were criminal or civil, because the complainant in the equity suit is the United States of America. The designation of the pleading by the Attorney General being unfamiliar to us is noninformative. The prayer for relief and the allegations in the application, however, suggest rather clearly a criminal proceeding.

The character and purpose of the punishment sought and granted, and the allegations upon which the prayer for relief is based, are generally determinative of the character of the proceedings. If punishment is imposed in civil contempt proceedings, it is remedial, and for the complainant's benefit. In criminal contempt, the judgment is punitive, and to vindicate the authority of the court. The money part of the judgment goes to the government.

The judgment here reviewed provides for the payment of a fine and imprisonment for a fixed period. Plaintiff in error is charged with having deliberately violated the court's orders, with having sold intoxicating liquor on the premises abated as a common nuisance. He is not charged with refusal to perform an act called for by an order of the court, but with having committed an act expressly forbidden by an order of the court. As stated by the court in the Gompers Case:

The distinction between refusing to do an act commanded, remedied by imprisonment until the party performs the required act, and doing an act forbidden, punished by imprisonment for a definite term, is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment."

If a judgment of imprisonment be entered in a civil contempt proceeding, ordinarily the defendant "carries the keys of his prison in his own pocket," and can discharge himself at any moment by doing what he has previously refused to do. The prayer for relief prays that a citation may issue against the defendant, "commanding him that he appear before this court and show cause why he should not be held in contempt of this court for violating the injunction issued by the court as above set forth." Petitioner was not seeking damages for wrongs committed. Relief was not sought in favor of the petitioner. But defendant was specifically informed that he was to meet a charge and face a possible judgment for "contempt of this court."

We therefore conclude that the proceedings were criminal in nature.

Being criminal, the judgment is abated by the death of the plaintiff in error. The judgment having abated, it follows that the writ of error should be and is hereby dismissed.