THE PEOPLE OF PUERTO RICO, ETC., Plaintiff, v. P. R. RAILWAY, LIGHT & POWER Co., Defendant and Petitioner-Appellant; PUERTO RICO ILUSTRADO, INC., ET AL., Respondents and Appellees.

No. 8165. Argued June 20, 1941.—Decided July 22, 1941.

Brown, González & Newsom, and E. Córdova Díaz for appellant. Rafael Cuevas Zequeira for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

As a proceeding ancillary to civil case No. 32557, of the District Court of San Juan, brought by The People of Puerto

Rico, represented by José E. Colón as Commissioner of the Interior, against the P. R. Railway, Light & Power Co., relating to the condemnation of property, the defendant filed a motion in said court requesting the punishment of Puerto Rico Ilustrado, Inc., which is a domestic corporation with its principal office in San Juan, P. R., and is the owner of the newspaper "El Mundo," for contempt in having published certain editorials in said newspaper in connection with certain allegations made by the defendant in said case.

An order to show cause was issued and, after the proper hearing, the lower court discharged the defendant. Feeling aggrieved by that decision, the P. R. Railway, Light & Power Co. took an appeal to this court. At a second hearing of the present case set for the 20th of last month, the defendant Puerto Rico Ilustrado, Inc., moved for the dismissal of the appeal on the ground, among others, that, as the contempt involved was a criminal contempt, and as the lower court had dismissed the contempt proceeding, the petitioner, at whose instance the proceeding had been instituted, was not entitled to appeal.

The appellant challenged the above grounds for dismissal and urged:

(a) That at the time of the filing of the motion to dismiss under consideration, the case had already been argued on the merits and was only awaiting a new hearing which has already been held, and that prior thereto another motion to dismiss on the same ground had been filed and disposed of adversely to the appellee. *People* v. *P. R. Ry., L. & P. Co.*, 56 P.R.R. 869; and

(b) That the contempt involved is civil and not criminal, as was held in the case just cited.

■ As the question raised is jurisdictional in character, it can be set up at any stage of the proceeding.

■ It is a settled rule that in criminal contempt proceedings an appeal may only be taken by the party against whom judgment has been rendered, just as in other criminal cases. *Union Tool Co.* v. *Wilson*, 259 U. S. 107.

The question to be decided in this case is whether the contempt proceeding wherein the defendant was discharged was criminal or civil in character. In order to settle the question thus raised, it becomes necessary first to establish the distinction between the two kinds of contempt. In *Union Tool Co.* v. *Wilson, supra,* it was said:

"Where a fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant and fixes its character for purposes of review. *In re Merchants' Stock & Grain Co.,* 223 U. S. 639."

Subsequently, in *McCrone* v. *U. S.,* 307 U. S. 61, 64, the Court was more explicit and declared:

"While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. Here, the summons served on petitioner required only that he testify in a tax inquiry properly conducted by an agent of the Bureau of Internal Revenue. And the agent's petition to the District Court, to which we may look in determining the nature of the proceeding, invoked judicial assistance solely in obtaining petitioner's testimony. Authority of the court was sought to buttress the procedure for collection of taxes and not in 'vindication of the public justice,' as in criminal cases.

"The judgment of contempt was civil, and appeal from it was governed by the statutory rules of civil appeals."

Lately, in *Nye et al.* v. *U. S. et al.,* 313 U. S. 33, 42, the doctrine laid down in *McCrone* v. *U. S., supra,* was ratified, the Court saying:

"We do not think this was a case of civil contempt. We recently stated in *McCrone* v. *United States,* 307 U. S. 61, 64, 'While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public.' The facts of this case do not meet that standard. While the proceedings in the District Court were entitled in

Elmore's action and the United States was not a party until the appeal, those circumstances though relevant (*Gompers* v. *Buck Stove & Range Co.*, 221 U. S. 418, 445–446) are not conclusive as to the nature of the contempt. The fact that Nye was ordered to pay the costs of the proceeding, including $500 to Guthrie, is also not decisive. As Mr. Justice Brandeis stated in *Union Tool Co.* v. *Wilson*, 259 U. S. 107, 110, 'Where a fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant and fixes its character for purposes of review.' The order imposes unconditional fines payable to the United States. It awards no relief to a private suitor. The prayer for relief and the acts charged carry the criminal hallmark. Cf. *Gompers* v. *Bucks Stove & Range Co.*, *supra*, p. 449. They clearly do not reveal any purpose to punish for contempt 'in aid of the adjudication sought in the principal suit.' *Lamb* v. *Cramer*, 285 U. S. 217, 220. When there is added the 'significant' fact (*Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 329) that Nye and Mayers were strangers, not parties, to Elmore's action, there can be no reasonable doubt that the punitive character of the order was dominant."

Summing up the above-cited decisions, we may say that a contempt is criminal where the action of the court aims at the punishment of an offense against its own dignity, irrespective of the rights of the parties to the action. It is of a civil nature when the action of the court tends to protect, by the use of sanctions, a private right involved in a litigation before such court. Where it appears from the acts with which the defendant is charged that the contempt is partly criminal and partly civil, the criminal aspect prevails over the civil aspect, and in such case the contempt is considered to be criminal for purposes of review of the judgment by a higher court.

Having determined the standard whereby criminal contempts may be distinguished from civil contempts, let us now consider the allegations and the prayer of the motion filed by the petitioner in the lower court seeking to have the appellee punished for contempt. In said motion and after setting forth that the condemnation proceeding already referred to by us was pending, the petitioner alleged that during the

pendency of certain demurrers filed by the defendant in the main proceeding, the said newspaper published on November 8, 1939, a letter containing a commentary and criticism in the form of an editorial setting forth the opinion of said newspaper regarding the merits of the case and especially regarding the merits of the demurrers filed by the defendant, criticizing adversely said allegations, which it characterized as a step taken for the exclusive purpose of delaying the litigation. The petitioner in the fifth paragraph of the above-mentioned motion makes the following comments on the effect of the said editorial:

"That the effect of the editorial or publication exhibited herewith and marked 'Exhibit A' was and is prejudicial to your petitioner as defendant in the aforesaid action and constitutes a discussion of said case beyond the control of the court; that it tended and still tends to influence the mind of the court to the prejudice of this defendant; that *said editorial or publication was and is offensive to the dignity and decorum of this court in that it is sought thereby to assume the exclusive prerogative of the court to decide the cases pending before it without its decision being affected or disturbed by unsolicited comments, criticisms, or opinions expressed by third parties and published; that the said editorial or publication has placed this Hon. Court in a difficult and embarrassing position to pass upon the demurrers filed by your petitioner in the aforesaid case because if the court had deemed that the same ought to have been sustained it would have become liable to be subjected to the scorn, contempt, unjust or even injurious criticism from the whole or a part of the community,* by reason of the opinion that said community may entertain or may have entertained on account of said editorial or publication; that the aforesaid reaction as regards the court from said publication or editorial still exists and will exist until the case is finally disposed of by this court or any other courts that might have to decide the same on appeal; and likewise the effect of said publication or editorial is to deprive your petitioner of its right guaranteed by law to a fair trial by a competent court of justice, in accordance with the legal practice and procedure without interference or disturbance from influences, comments or publications beyond the control of the court."

It was further alleged in the said motion that on December 21, 1939, the defendant filed its answer in the condemnation proceeding and two days later, while the case was still pending decision, the same newspaper published, circulated, and distributed throughout the city of San Juan and the Island of Puerto Rico its daily edition with commentaries and criticisms in the form of an editorial regarding the merits of the case and the allegations and defenses contained in the said answer from petitioner, unfavorably criticizing such allegations and defenses and branding them, among other epithets, as absurd and without justification, reasserting the opinion of said newspaper that such demurrers had been interposed for the sole purpose of delaying the course of the litigation. The following is a commentary by the defendant upon the said publication:

"That the effect of the editorial or publication exhibited herewith and marked 'Exhibit B' was and is prejudicial to your petitioner as defendant in the aforesaid action and constitutes a discussion of the said case beyond the control of the court; that the said editorial or publication *has placed this Hon. Court in a difficult and embarrassing position in regard to a final determination of the case and especially as to any order or orders that it might make in connection with the allegations and defenses contained in the answer filed by your petitioner, because, in case the same were sustained, this Hon. Court will be exposed to the contempt, scorn, unjust and even injurious criticism from the whole or a part of the community, by reason of the opinion that said community may entertain or may have entertained on account of said editorial or publication;* that the aforesaid effect as regards the court because of the said publication or editorial still exists and will exist until the case is finally disposed of by this court or any other court that might have to decide the same on appeal; that likewise the effect of said publication or editorial is to deprive your petitioner of its right guaranteed by law to a fair trial by a competent court of justice, in accordance with the legal practices and procedure without interference or disturbances from influences, commentaries or publications beyond the control of the court."

Lastly, let us consider the prayer of the motion or petition of the plaintiff in order to determine the character of the relief sought. It textually reads thus:

"By virtue of the facts above alleged, we respectfully pray the court to issue an order against the corporation Puerto Rico Ilustrado, Inc., directed to its editor José Coll Vidal and its assistant manager, Angel Ramos, ordering them *to appear* within the time that might be set by this honorable court *at a hearing to show cause,* if any they have, why they should not be punished for contempt by reason of the publication of the two editorials referred to in this petition."

From a consideration of the allegations and the prayer of the motion of the complainant it is unquestionable that the contempt charged against the appellee is at the same time civil and criminal, because while a certain protection is therein sought to the interests of the complainant, it is also sought to vindicate the authority of the court, which, according to the complaint, has been attacked, the purpose pursued by the imposition of a penalty being to serve as a deterrent to avoid the repetition of the offense. That being so, the criminal feature of the proceeding is dominant and consequently the contempt under consideration ought to be held to be criminal for the purposes of the review of the judgment. *Union Tool Co.* v. *Wilson, supra.* [4] It seems evident that, as there is involved a proceeding for a contempt in which the defendant has been discharged, a review of the judgment by certiorari would not be available either, for the same reason which precludes a resort to the remedy by appeal.

On May 31, 1940, when the first motion to dismiss this appeal (*People* v. *P. R. Ry. L. & P. Co.,* 56 P.R.R. 869) was denied, the case of *Nye* v. *U. S., supra,* had not yet been decided. It was decided on April 14, 1941, and in it the difference between criminal and civil contempts was clearly and definitely established. The conclusion then reached was that "the dominant element in the proceeding .... was its civil aspect," and considering that the judgment discharging the defendant was appealable, the motion to dismiss was denied.

That holding was erroneous according to the principles which we have set forth above and which hold that the criminal feature must prevail over the civil aspect. Therefore, said holding must be considered as overruled.

For the reasons stated the appeal taken by the P. R. Railway, Light & Power Co. must be dismissed, as the same does not lie.

Mr. Justice Todd, Jr., took no part in the decision of this case.