## CANOE CREEK COAL CO. v. CHRISTINSON et al.

(District Court, W. D. Kentucky, at Owensboro. May 1, 1922.)

No. 23.

**1. Injunction ⚖=101(1)—Suit held not within purview of Clayton Act.**

    This case not being one between "an employer and employees," nor between "employers and employees," nor between "employees," nor one between "persons employed and persons seeking employment," but one between a citizen of Delaware and citizens of Kentucky, in which relief by

injunction is sought on general principles of equity only, *held,* that it is not within section 20 of the Clayton Act (Comp. St. § 1243d).

**2. Jury ☞10—Judicial Code, § 268, not repealed by Clayton Act.**

Clayton Act Oct. 15, 1914, § 1 (Comp. St. § 8835a), defines the anti-trust laws as including Act July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830). Section 16 (Comp. St. § 8835o) provides for injunctive relief against threatened loss or damage "by a violation of the anti-trust laws." Sections 21 and 22 (Comp. St. §§ 1245a, 1245b) provide broadly for punishment for contempt for violation of an order or decree of court, if the act be "of such character as to constitute also a criminal offense," and that "in all cases within the purview of this act," on demand of accused, trial shall be by jury. Section 24 (Comp. St. § 1245d) provides that "all other cases of contempt, not specifically embraced within section twenty-one of this act, may be punished in conformity to the usages of law and equity now prevailing." *Held,* that such provisions do not repeal Judicial Code, § 268 (Comp. St. § 1245), which provides generally for punishment of contempts, under which trial is without a jury; that cases "within the purview of this act," are those brought for violation of the anti-trust laws, under section 16, and that the provisions of sections 21 and 22 apply only to such cases; that all other proceedings for contempt for violation of injunctions are governed by Judicial Code, § 268.

In Equity. Suit by the Canoe Creek Coal Company against Stewart Christinson and others. Proceedings for contempt against S. C. Sandefur and Letcher Martin. On question of right to jury trial. Denied.

E. P. Humphrey and Humphrey, Crawford & Middleton, all of Louisville, Ky., for plaintiff.

Henson & Taylor, of Henderson, Ky., for defendants.

WALTER EVANS, District Judge. [1] In endeavoring to reach a conclusion as to the proper punishment to be imposed upon the defendants, S. C. Sandefur and Letcher Martin, for the violation by them severally of the order of injunction entered herein on the 27th of January, 1922, the court has carefully analyzed the plaintiff's bill of complaint in order to ascertain whether or not it is based upon the provisions of the act entitled "An act to supplement existing laws against unlawful restraints of monopolies, and for other purposes" (38 Stats. 730–740), usually called the Clayton Act, and especially to ascertain whether this action was brought under or must conform to sections 20, 21, and 22 of that act (Comp. St. §§ 1243d, 1245a, 1245b), or whether it is based upon general principles of law and equity, and must come under the provisions either of section 24 of the Clayton Act (Comp. St. § 1245d), or those of section 268 of the Judicial Code (Comp. St. § 1245), or of both. This has all been necessary to a determination of the question of whether the said two defendants (now the respondents to the rule of the court entered herein on March 16, 1922) were entitled to have a jury impaneled, and have it, instead of the court, determine whether they, or either of them, had been guilty of the acts charged to have been in disobedience and contempt of the court's order of injunction in this action.

Section 20 of the Clayton Act (Comp. St. § 1243d) provides that no restraining order or injunction shall be granted by any court of the United States or by any judge thereof—

"in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which there is no adequate remedy at law, and such property or property right must be described with particularity in the application, which must be in writing and sworn to by the applicant or by his agent or attorney."

The court has carefully examined the bill of complaint to see, first, whether it is a case between an employer and employees; second, whether it is a case between employers and employees; third, whether it is a case between employees; or, fourth, whether it is a case between persons employed and persons seeking employment, involving or growing out of a dispute concerning terms or conditions of employment, within any fair or just interpretation of the provisions of that section.

The bill of complaint, which was filed January 23, 1922, shows that the plaintiff is a citizen of the state of Delaware, and that each of the defendants is a citizen of Kentucky. The jurisdictional basis of the suit is therefore diverse citizenship, and the amount involved is shown to exceed the amount or value of $3,000, exclusive of interest and costs.

The bill avers that the plaintiff is, and has been for more than a year, operating coal mines in Henderson county, Ky., and selling and shipping coal in interstate commerce, and in paragraph 3 plaintiff avers that all of the defendants are members of a labor union or organization known as United Mine Workers of America, District No. 23, and that the defendants Chas. Burton, Jas. Ashby, Pat Dean, and Ira Williams are officers thereof. Plaintiff states that the defendants Stewart Christinson, Robt. Hall, Jno. Dunn, Vernie Haire, Chas. Burton, S. C. Sandefur, Jas. Ashby, Jas. Haire, Sam Dye, Ed. Lloyd, Arthur Raymond, Dillard Gish, Luther Springer, S. D. Pirtle, John Jardo, J. T. Alderson, Pat Dean, F. H. Spence, Wilson Dunn, Ira Williams, Lee Gibson, Chas. Spence, Wm. Goldsberry, Arthur Davis, Lawrence Brann, and Wilbur Whayne were, until Friday, January 13, 1922, in the employment of the plaintiff in the operation of its said mines, and that on that day, pursuant to a conspiracy between said last-named defendants and all of the other defendants hereto, the said defendants who were in the employment of the plaintiff went out on a strike, and left the service and employment of the plaintiff by concerted action, which was the result of an unlawful conspiracy between the defendants, some of whom were employees of the plaintiff, as above stated, and others who were not in the employment of the plaintiff, but who were sympathizing with and aiding and abetting the said strikers and former employees of the plaintiff.

The plaintiff in its bill followed that paragraph with quite a number of others, in which it accurately characterizes as "former employees" those of the defendants who had previously been in its service, but had ceased to hold that relation before this action was brought, and then described the wrongful acts with which it charges the defendants. Upon the averments thus made in detail in the bill, plaintiff claims re-

lief, consisting largely of an order enjoining and restraining the defendants from continuing to do the acts and from pursuing the line of conduct complained of in the bill. The plaintiff then made its motion for the therein described temporary restraining order, and at the hearing of that motion much testimony was offered by both sides to the controversy. At its conclusion and after arguments by counsel, the court concluded that the testimony clearly showed that the temporary restraining order should be made.

On March 16, 1922, the plaintiff by its counsel and in writing moved the court for a rule against Letcher Martin, Urey Steele, S. C. Sandefur, Chas. Spence, and F. H. Spence, requiring them to show cause why they should not be punished for their disobedience of the said restraining order and injunction, and this motion was supported by the affidavits of several persons. Notice of this motion was given to each one of the persons concerned, and when it came on to be heard the persons last named in a written statement opposed the granting of any of the relief sought, upon the ground that no cause had been shown for the charge against them. The court was of opinion that an adequate basis for hearing the motion for the rule to show cause had been shown, and the testimony on that motion was fully heard from all sides.

The five several respondents to that rule, in written responses filed, endeavored to show cause why they should not be punished, and at the conclusion of the testimony the court was of opinion that it did not warrant further proceedings against either Urey Steele, Chas. Spence, or F. H. Spence, and discharged the rule as to them. The court, however, was of a different opinion upon the testimony heard in support of the rule as against Letcher Martin and S. C. Sandefur, and found them guilty of having done certain of the acts imputed to them, respectively, as the basis of the rule to show cause why they should not be punished for the contempt of the court involved in what they had done.

All of the five respondents, however, had in written motions demanded that the court summon and impanel a jury to hear and determine the questions involved. The court, tentatively at least, overruled that motion upon grounds which it is the object of this opinion to discuss. Pending that discussion it has not passed its sentence upon the two persons convicted. One of its objects in this was to obtain an opportunity to carefully look into the question of whether the respondents Letcher Martin and S. C. Sandefur were entitled under any statute to have the court impanel a jury to hear and determine the questions of fact involved.

Recalling the provisions of section 20 of the Clayton Act, we have concluded, first, that this action is not one between an employer and employees, inasmuch as no one of the defendants was an employee of the plaintiff when this action was begun, on January 23, 1922; nor, second, for the same reason is it an action between employers and employees; nor, third, is it an action between employees, none of the parties being either one or the other in respect to each other. That much is clear.

The remaining inquiry is whether this is a suit between "persons employed" and "persons seeking employment," growing "out of any dispute concerning terms or conditions of employment," within the meaning of section 20 of the Clayton Act. Upon full and careful consideration of the allegations of the bill, clouded as they are by statements as to a "strike," we have not been able, upon full examination of all the pleadings, to conclude that this is in any way an action between "persons employed" and "persons seeking employment," whether it grows out of one character of dispute or another. We must read the statute and endeavor to construe it, but disclaim, as always, any right or power to add to it or alter it.

The testimony at the hearing of the motion for an injunction as to the wrongdoing of the defendants was clear, and the actual facts shown justified the order granting it, entered January 27, 1922. In drawing up the order general equity rules were applied, and they in no way required any disregard of any proper limitations, including such as were approved by the Supreme Court of the United States in the very recent cases under the Clayton Act of American Steel Foundries v. Tri-City Central Trades Council et al. (decided December 5, 1921) 257 U. S. 184, 42 Sup. Ct. 72, 66 L. Ed. ——, and Truax et al. v. Corrigan et al. (decided December 19, 1921) 257 U. S. 312, 42 Sup. Ct. 124, 66 L. Ed. ——, often spoken of as the "picketing cases." Carefully recalling in this connection the very applicable provisions of section 20 of the Clayton Act (Comp. St. § 1243d), which forbid the issuance of restraining orders and injunctions in many specified situations, we find that sections 21 and 22 (sections 1245a, 1245b), in immediate juxtaposition, are in this language, namely:

"Sec. 21. That any person who shall willfully disobey any lawful writ, process, rule, decree, or command of any District Court of the United States or any court of the District of Columbia by doing any act or thing therein, or thereby forbidden to be done by him, if the act or thing so done by him be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any state in which the act was committed, shall be proceeded against for his said contempt as hereinafter provided.

"Sec. 22. That whenever it shall be made to appear to any District Court or judge thereof, or to any judge therein sitting, by the return of a proper officer on lawful process, or upon the affidavit of some credible person, or by information filed by any district attorney, that there is reasonable ground to believe that any person has been guilty of such contempt, the court or judge thereof, or any judge therein sitting, may issue a rule requiring the said person so charged to show cause upon a day certain why he should not be punished therefor, which rule, together with a copy of the affidavit or information, shall be served upon the person charged, with sufficient promptness to enable him to prepare for and make return to the order at the time fixed therein. If upon or by such return, in the judgment of the court, the alleged contempt be not sufficiently purged, a trial shall be directed at a time and place fixed by the court: Provided, however, that if the accused, being a natural person, fail or refuse to make return to the rule to show cause, an attachment may issue against his person to compel an answer, and in case of his continued failure or refusal, or if for any reason it be impracticable to dispose of the matter on the return day, he may be required to give reasonable bail for his attendance at the trial and his submission to the final judgment of the court. Where the accused is a body corporate, and at-

tachment for the sequestration of its property may be issued upon like refusal or failure to answer.  .

"*In all cases within the purview of this act* such trial may be by the court, or, upon demand of the accused, by a jury; in which latter event the court may impanel a jury from the jurors then in attendance, or the court or the judge thereof in chambers may cause a sufficient number of jurors to be selected and summoned, as provided by law, to attend at the time and place of trial, at which time a jury shall be selected and impaneled as upon a trial for misdemeanor; and such trial shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information.

"If the accused be found guilty, judgment shall be entered accordingly, prescribing the punishment, either by fine or imprisonment, or both, in the discretion of the court.

## Section 24 of the act (Comp. St. § 1245d) provides as follows:

"That nothing herein contained shall be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced within section 21 of this act, may be punished in conformity to the usages at law and in equity now prevailing."

This section has been construed in some of its important phases in the recent case of Forrest v. United States (C. C. A.) 277 Fed. 873.

Going back a little we find section 16 of the act (Comp. St. § 8835o) to be as follows:  ·

"That any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by violation of *the anti-trust laws,* including sections 2, 3, 7 and 8 of this act, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: Provided, that nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to Regulate Commerce, approved February 4, 1887, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

## Part of section 17 (Comp. St. § 1243a) is thus expressed:

"Section 263 of an act entitled 'An act to codify, revise, and amend the laws relating to the judiciary,' approved March 3, 1911, is hereby repealed.

"Nothing in this section contained shall be deemed to alter, repeal, or amend section 266 of an act entitled 'An act to codify, revise, and amend the laws relating to the judiciary,' approved March 3, 1911."

Nothing is said in the Clayton Act about section 268 of the Judicial Code (Comp. St. § 1245), which reads as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by

any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

The language of that section is broad, comprehensive, and far-reaching, and certainly no purpose to repeal it was expressly manifested. In this situation the question is: Does this case come "within the purview" of the Clayton Act, in the sense of that phrase as used in section 22, thereby giving the respondents the right to demand a jury at the trial of the charge of contempt, or is this case to be recognized as fairly outside of that "purview" and within section 268 of the Judicial Code?

The equally broad language of section 21 of the later act gives all the trouble. Was that section designed only for the enforcement of the "anti-trust laws," including the Clayton Act, as being within their purview, or was it designed thereby to make a new code for the definition and trial of contempts generally, whether or not they were within the purview of the anti-trust laws and the purposes of the Clayton Act? If the latter, the demand by the respondents for a jury was within their rights; otherwise not. We are thus brought to the very interesting and important problem which we are endeavoring to solve by what we conceive to be the applicable and controlling rules.

Recognizing its importance, and the necessity of ascertaining the full scope and also the exact limitations of the phrase "within the purview of this act," used in the second clause of section 22 (38 Stat. p. 739), we may repeat that the Clayton Act is entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes." Its first section (Comp. St. § 8835a) opens with this sentence:

"That 'anti-trust laws,' as used herein, includes the act entitled 'An act to protect trade and commerce against unlawful restraints and monopolies,' approved July 2, 1890; sections 73 to 77, inclusive, of an act entitled 'An act to reduce taxation, to provide revenue for the government, and for other purposes,' of August 27, 1894; and act entitled 'An act to amend sections 73 and 76 of the act of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the government, and for other purposes," approved February 12, 1913; *and also this act.*"

In section 2 (Comp. St. § 8835b) it forbids discrimination in price between different purchasers. In section 3 (Comp. St. § 8835c) it forbids terms, leases or sales, etc., which bind a party not to use goods of a competitor, and in section 4 (Comp. St. § 8835d) it gives a remedy to persons injured in their business, if disregard of the act is shown. In section 5 (Comp. St. § 8835e) it makes certain provisions in respect to the effect which shall be given a final judgment or decree in suits brought by or on behalf of the United States. In section 6 (Comp. St. § 8835f) it provides that the labor of a human being is not a commodity or an article of commerce. By section 7 (Comp. St. § 8835g) it forbids the acquisition by certain corporations of all the capital stock of another corporation. In a later section it provides means for preventing banks, bank directors, and trust companies, and presidents and officers of corporations generally, from doing things forbidden by the act, and provides in section 10 (Comp. St. § 8835i) that after two years from the passage of the act no common carrier engaged in commerce shall have

any dealings in securities, supplies, or other articles of commerce, or make or have any contracts therefor.

The fifteenth section of the act (Comp. St. § 8835n) gives to the United States District Courts *"jurisdiction to prevent and restrain violations of this act."* It also provides for certain modes of proceeding, etc., and section 16 (Comp. St. § 8835o) follows with the very suggestive provisions above copied. In section 17 (Comp. St. § 1243a) a clause is inserted repealing section 263 of the Judicial Code, though expressly providing that this shall not repeal section 266 (Comp. St. § 1243), which latter section has relation to injunctions, etc., respecting laws of the states only.

[2] There is in the Clayton Act no specific manifestation of any purpose to repeal section 268 of the Judicial Code (Comp. St. § 1245), and it is this situation that makes manifest the importance of the inquiry whether section 21 of the Clayton Act (Comp. St. § 1245a), though very general in terms, was intended to apply to or reach any and all contempt cases, or was intended to be limited to those committed in cases "within the purview" of the Clayton Act, namely, the "anti-trust" laws, or was it so general as also to repeal section 268 of that Code by reason of its being in different language? In this connection we think the above-copied provisions of section 16 are very instructive.[1]

Of course, certain elementary rules of statutory construction should not be overlooked when considering the general question involved, namely: Was it the intention and purpose of Congress to repeal section 268 of the Judicial Code? That intention, if we can ascertain what it was, must be controlling—intention always being a vital question in the interpretation of statutes.

The language of section 268 of the Code is plain and unambiguous. So is that of section 21 of the Clayton Act, and it, when read by itself and apart from all the other sections, being the later act, would repeal the earlier one, if that were the congressional intention. But was that intention restricted to narrower limits by the earlier provisions of the Clayton Act? is the proposition we regard as vital here. There appear to be no limitations in the terms of section 21 of the Clayton Act when standing alone; but can we fairly leave it to stand alone, in view of what precedes it in the act, and also of what immediately follows it— both having been framed in close connection with sections 16 and 21, and apparently without anything being in the congressional mind except the objects and purposes of that particular legislation? The first 19 sections of the Clayton Act manifest certain clearly stated purposes, which are limited by the language used. These sections are immediately followed by section 20, and that by section 21, and should, we think, necessarily be construed in connection with ·the preceding sections. This is followed by section 22, which is general and far-reaching. But must not section 22, in the light of many elementary rules of construction, be held to limit the operations of section 21 to "all cases within the

---

[1] It may be interesting to note that in its very recent opinion in United Shoe Machinery Co. v. United States, 258 U. S. ——, 42 Sup. Ct. 363, 66 L. Ed. ——, the Supreme Court spoke of the "limited sphere" of the Clayton Act.

purview of this Act," namely, the anti-trust laws, including the Clayton Act, as its first section demands?

In United States v. Union Pacific Railroad Co., 91 U. S. on page 79 (23 L. Ed. 224), the Supreme Court said:

"In construing an act of Congress, we are not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against its passage. The act itself speaks the will of Congress, and this is to be ascertained from the language used. But courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it. Aldridge v. Williams, 3 How. 24; Preston v. Browder, 1 Wheat. 120."

In Holy Trinity Church v. United States, 143 U. S. on page 459, 12 Sup. Ct. on page 512, 36 L. Ed. 226, it used this language:

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the Legislature intended to include the particular act."

And in Cherokee Intermarriage Cases, 203 U. S. at page 89, 27 Sup. Ct. at page 34, 51 L. Ed. 96, the doctrine was thus stated:

"The doctrine is familiar that the language of a statute is to be interpreted in the light of the particular matter in hand and the object sought to be accomplished as manifested by other parts of the act, and the words used may be qualified by their surroundings and connections."

In connection with these clearly expressed rules we think it is not inaccurate to say that public history shows that the Clayton Act was the result of yielding to the clamor of the more or less political and industrial elements of our population for legislation of the general nature embodied in its provisions. It is the accuracy of this statement which makes it all the more probable that it was the intention of those who enacted the statute to meet that demand, in what was done rather than to further diminish or limit the powers of the courts in their judicial (but not political) efforts to enforce their own orders, decrees, and judgments by all proper processes.

In this connection the remarkable situation presents itself of the courts being required in equity cases within the purview of the Clayton Act to impanel juries to hear and determine by a unanimous vote the usually very minor questions of disobedience of the court's orders and process in such cases, though all other issues of fact raised therein, however vast their importance, must be tried by the court alone without a jury. In short, in equity cases under the anti-trust laws, a jury must be impaneled to try the mere question of disobedience of the court's orders—thus leaving the court under the domination of the jury in respect to the enforcement of its orders, while the immensely greater issues, involving the most important rights, are to be settled by the court alone, in conformity with the equity practice established

upon centuries of experience and recognized by the Constitution in article 3, § 2.

Such an anomaly might have been the result of the effort to meet some demand for provisions in the anti-trust laws; that in great measure, if not altogether, being the occasion of the legislation. In our effort to ascertain whether it was also the intention of Congress in respect to cases outside the purview of the anti-trust laws to require jury trials in the very subordinate matter of disobedience of the court's orders, or whether the requirement as to juries was intended to be limited to the narrow field of the anti-trust legislation and the purview of the Clayton Act, and thereby leave section 268 of the Judicial Code in full operation outside that field or purview, we have industriously gone over what we suppose are the important factors, and have been convinced that this case, as made by the bill of complaint, is not one which is within the purview of the Clayton Act in any of its features, and therefore that the provisions of that act as embodied in sections 21 and 22 thereof do not apply to this case, but that section 268 of the Judicial Code, if not repealed, may be applicable and controlling in this instance. Alternatively it may be noted that section 24 of the Clayton Act provides for the punishment of contempts committed, first, in the presence of the court; second, those so near thereto as to obstruct the administration of justice; and third those committed in disobedience of a lawful writ, process, order, rule, decree, or command *entered in any suit or action brought or prosecuted in the name of the United States* (which this is not), but that such or other cases of contempt not specifically embraced within section 24 of the Act may be "punished in conformity to the usages at law and in equity now prevailing." Such usages either at law or in equity do not require a jury, and we have endeavored to show clearly that this case is not one within section 21 of the Clayton Act, requiring a jury in certain cases.

Upon these grounds we have concluded that the respondents S. C. Sandefur and Letcher Martin were not entitled to demand a jury trial, and that the refusal of that demand conformed to the requirements of the situation. The court will therefore now impose a sentence upon each of those respondents, which will not, however, go beyond a fine.

