### In re MARCUS et al.

District Court, W. D. Pennsylvania. October 1, 1924.

No. 11456.

1. **Receivers** ⊜⇒74—**Interference with receiver constitutes "contempt of court."**

Interference with a receiver appointed by a court constitutes a "contempt of the court."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contempt.]

2. **Motions** ⊜⇒32—**Appearance and answer to rule to show cause confers jurisdiction, regardless of sufficiency of service.**

Appearance and answer to a rule to show cause confers jurisdiction, independently of sufficiency of service of the rule.

In Bankruptcy. In the matter of Jacob Marcus and Benjamin Marcus, individually and as partners trading as Marcus Bros. Civil contempt proceedings on petition of the Pennsylvania Trust Company, receiver, against the bankrupts. Matter referred to referee in bankruptcy.

See, also, 20 F.(2d) 454; 21 F.(2d) 483.

L. C. Barton, of Pittsburgh, Pa., for Marcus Bros.

T. M. Benner, of Pittsburgh, Pa., for Pennsylvania Trust Co.

F. B. Ingersoll and J. M. Redden, both of Pittsburgh, Pa., for creditors.

SCHOONMAKER, District Judge. This is a civil contempt proceeding, brought to the attention of the court in the matter of the bankruptcy of Jacob Marcus and Benjamin Marcus, trading as Marcus Bros. upon the petition of the Pennsylvania Trust Company, the receiver appointed by this court to take custody of the property and assets of the alleged bankrupt. The receiver alleges that the said Benjamin Marcus and Jacob Marcus interfered with the possession by the receiver of the business of the said Marcus Bros., in that they did clandestinely remove large amounts of merchandise and assets from the custody of the receiver without the knowledge of the receiver, and with intent to defraud the receiver and creditors of the alleged bankrupts, and asks that the respondents be adjudged in contempt of this court. The receiver, by motion, has asked leave of court to amend this petition by adding to the prayer thereof the words, "and that the said Jacob Marcus and Benjamin Marcus be decreed to return to your petitioner all merchandise and moneys taken by them from your petitioner, or its value, and to stand committed until they comply with the order of your honorable court." This motion the respondents are opposing, because it was made after the hearing upon the petition sought to be amended. We are of the opinion that the motion should be granted, and have so ordered. A motion to amend of this sort could be granted even in the Court of Appeals and but brings the prayer of the petition into harmony with the facts set forth in the petition for surely, if it is a fact that the respondents have taken merchandise and assets from the custody of the court by clandestinely removing them from the possession of the receiver appointed by the court, they should be returned.

We therefore now take up the consideration of this case upon the petition as amended.

A rule to show cause was granted upon this petition, and the respondents filed an answer denying, first, the jurisdiction of the court to issue the rule to show cause upon the facts set forth in the petition; and, second, denying the allegations of misconduct on their part contained in the petition of the receiver.

On the return day of the rule, testimony was taken upon the subject-matter complained of by the receiver. At the outset of the case, we are met by the jurisdictional question raised by respondents. The petitioner, the receiver, would treat this proceeding as a civil contempt case and the respondents, Marcus Bros., would treat it as a criminal contempt case, and urged that the proceedings were in conflict with the provisions of section 21 of the Clayton Act (38 Stat. L. 738 [28 USCA § 386; Comp. St. § 1245a]), in that they were, by reason of the consideration of this case as a civil contempt case, deprived of their right to a trial by jury. Inasmuch as the petition by the receiver is filed on the civil side of the court in the bankruptcy case and relief is asked by the receiver in the prayer of his amended petition

filed herein for the return of the goods alleged to have been clandestinely removed, or their value, to the receiver, we conclude that this is a civil contempt case and so treat it in dealing with the petition of the receiver and the answer of the respondents and the testimony taken thereon.

We are of the opinion, however, that the facts of this case, as we find them, would and do justify a criminal contempt proceeding, and are of the opinion that the disclosures in this proceeding should be brought to the attention of the United States attorney. If the facts justify him in so doing, he may file an information for criminal contempt. The instant case, however, we think is to be treated as a civil proceeding, not only to uphold the dignity of the court and its officers, but to restore to the receivers of this estate the property and assets to which they would be justly entitled. In the main, we may say that it is ofttimes difficult to define a contempt proceeding either as precisely criminal or precisely civil. As stated by Mr. Justice Brewer in Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 S. Ct. 665, 48 L. Ed. 997:

"A contempt proceeding is sui generis. * * * The purpose of contempt proceedings is to uphold the power of the court, and also .to secure to suitors therein the rights by it awarded."

A more recent definition of criminal and civil contempts is found in the opinion of Sanborn, J., in the case of Reeder v. Morton-Gregson Co. (C. C. A. 8th Cir. 1924) 296 F. at page 787, where the court says:

"But a civil contempt is a refusal to do an act commanded, and is remedied by imprisonment or like coercion until the party performs the act. A criminal contempt is the doing of an act forbidden. It is a past act. It is a thing done, and imprisonment therefor is punitive, not coercive, inflicted solely as punishment for the completed act of disobedience."

This definition is entirely in accord with what is probably the leading case on this question in the case of Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, where Mr. Justice Lamar says:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. Conkey, 194 U. S. 329 [24 S. Ct. 665, 48 L. Ed. 997]. * * * It is not the fact of punishment but rather its character and purpose that often serve to distinguish

between the two classes of cases. If it is for civil contempt, the punishment is remedial, and for the benefit of the complainant. But, if it is for criminal contempt, the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order."

[1] It is definitely settled also that an interference with a receiver appointed by the court constitutes a contempt. This was stated by Mr. Justice Fuller in Re Tyler, 149 U. S. 164, pages 181, 182, 13 S. Ct. 785, 789 (37 L. Ed. 689):

"No rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court; and that, if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor."

Now, the petition in this case sets out the appointment of a receiver by this court on the 7th day of May, 1924, and alleges that he went into possession of the property and business assets of the alleged bankrupt on May 7, 1924, and that on that date and at various other times, the respondents, knowing of the receivership of the court, did clandestinely remove large amounts of merchandise and assets from the custody of the receiver without the knowledge of the receiver, and with intent to defraud the receiver and the creditors of the said alleged bankrupts.

We think these allegations sufficiently disclose facts giving the court jurisdiction of the subject-matter of this action.

[2] The defendants at the hearing urged that there was not sufficient service of the rule to show cause upon them, but nevertheless they appeared in the case, and, when

counsel for the respondents was asked by the court at the hearing for whom he appeared, he said he appeared for Marcus Bros., Benjamin and Jacob. In addition to that, the respondents filed an answer which was signed by each of them, and finally each of the respondents took the witness stand and testified in his own behalf. The appearance of the respondents on the return day of the rule, independently of the service of the rule, is sufficient to confer jurisdiction. Ex parte Craig (C. C. A. 2nd Cir. 1922) 282 F. 138.

The respondents in their arguments also contend, on the question of jurisdiction, that the treating of this as a civil contempt case deprives them of the right of a jury trial, which they are entitled to under the Clayton Act. This portion of the Clayton Act granting jury trials has been held to be unconstitutional in the case of In re Atchison (D. C. 1922) 284 F. 604. But, in any event, section 22 of the Clayton Act (28 USCA § 387 [Comp. St. § 1245b]) only includes cases that come within the purview of the act, namely, those involving industrial disputes or violations of the anti-trust laws of the United States. Canoe Creek Coal Co. v. Christinson (D. C. 1922) 281 F. 559. We therefore conclude that none of the jurisdictional objections taken by respondents are well founded and that the case must now be considered upon its merits.

From the petition, answer, and proofs in this case, we find that the Pennsylvania Trust Company was appointed receiver in this case on the 7th day of May, 1924, and went into possession of the property and assets of Marcus Bros. under orders of this court to operate the business; that the respondents knew of this receivership, and upon its inception became employees of the receiver; that at or about the beginning of the receivership the receiver undertook to take an inventory, in which Jacob Marcus, employed by the receiver, participated; and that, in the course of taking that inventory, Jacob Marcus did secretly instruct his former employees to give quantities of 50 to 75 per cent. less than the actual merchandise on hand; and that, in the course of making up the inventory sheets, the quantities, as a matter of fact, were stated at from 50 to 75 per cent. less than the actual quantities on hand; and that, almost immediately upon the appointment of a receiver, Marcus Bros. caused shipments to go out clandestinely from the firm's store in the city of Pittsburgh, without the knowledge of the receiver, and without his being informed of the fact. These goods were not shipped in the regular manner and no record was ever made of them, nor was any money received by the receiver or its representatives for goods so shipped. It is probably true that goods to the value of twenty five to thirty thousand dollars were removed in this manner and shipped to one person alone, and probably eight to ten thousand dollars worth of goods were shipped to other places without being accounted for to the receiver. In such removals both the respondents participated, Jacob Marcus actively, and Benjamin Marcus as a watchman upon the actions of the representative of the receiver. The respondents undertook to account for the shipments thus apparently unaccounted for, by stating that they were paid for in a so-called cash and carry part of the business conducted by the receiver, where goods were sold for cash and no record made of the names of the purchasers; but the testimony in that regard is not satisfactory to the court, and we are convinced that such is not the case. We believe and find that large quantities of merchandise were clandestinely removed by Benjamin and Jacob Marcus from the possession of the receiver.

We are of the opinion that the goods so removed should be accounted for by the respondents, and, if they fail so to account, the respondents should be adjudged in contempt of this court for their action in this matter.

The testimony thus far taken does not sufficiently disclose the whole situation from which at the present time this court could order the return of any definite amount. We are of the opinion that this matter should be referred to a referee in bankruptcy as special master, for the purpose of taking testimony and ascertaining the quantity and value of the property and assets of Marcus Bros. which have been clandestinely removed from the possession of the receiver, and to make a report, with his findings and recommendations with reference thereto. Upon such finding, the respondents will be ordered and directed to turn the amount thereof, if any, to the possession of the receiver, and, failing therein, to be adjudged in contempt of this court. An order may be entered accordingly.

### Order of Court.

And now, October 1, 1924, it is ordered that the petition, answer, and testimony taken in the civil contempt proceedings in the above matter be referred to Watson B. Adair, Esq., referee in bankruptcy, to take further testimony and ascertain and fix the quantity and value of goods and assets clandestinely

taken or removed by the respondents from the possession of the receiver and report his findings with reference thereto to the court.