## PHILIPPE v. WINDOW GLASS CUTTERS LEAGUE OF AMERICA et al.

### Civ. A. No. 856.

United States District Court
W. D. Arkansas, Fort Smith Division.
Aug. 9, 1951.

Window Glass Cutters League of America, Lester Thiebert, Hubert Gaston, Paul L. Kopp and George Berger. It was therein alleged that on May 17, 1949, United States Letters Patent No. 2,470,444 was issued to plantiff for an invention in a glass cutter, and that since that date plaintiff had been and still was the owner of the patent; that the defendants had and were at that time infringing said patent by making, selling, and using glass cutters embodying the patented invention; that written notice had been given defendants of said infringement; that defendants had derived unlawful gains and profits from such infringement. The prayer was for a preliminary and final injunction against defendants, for an accounting of profits, and for damages in the amount of $27,000.

On August 5, 1949, an amended and substituted complaint was filed making Oscar Walker a defendant. It was alleged that Walker is an individual doing business as Walker's Machine Shop in Grapeville, Pennsylvania, and had been and was committing acts of infringement of the rights of plaintiff through his agent, Hubert Gaston. The remaining allegations of the amended and substituted complaint are the same as those in the original. Subsequently, and on November 16, 1949, it appearing that personal service of summons could not be obtained, the amended and substituted complaint was dismissed as to Walker upon motion of the plaintiff.

Thereafter, the other defendants filed answers and in substance denied the infringement and receipt of notice. And, they alleged that "a substantial portion of plaintiff's alleged invention, specifically the yoke or saddle and block contained on plaintiff's alleged invention, have been used in the cutting of glass for a period of approximately ten years and were well known in the trade at the time of the said alleged patent."

The cause came on for trial on November 22, 1949, and during the presentation of the evidence on the part of the plaintiff the parties announced in open court that they could agree upon a decree. Pursuant to the agreement of the parties, findings of fact, conclusions of law and a decree were

Franklin Wilder, Edgar E. Bethell, Fort Smith, Ark., for plaintiff.

Harry P. Warner, of Warner & Warner, Fort Smith, Ark., Robert A. Wilson, Cincinnati, Ohio, for defendants.

JOHN E. MILLER, District Judge.

The complaint in this case was filed July 7, 1949, by the plaintiff against defendants,

filed and entered November 26, 1949. In its conclusions of law, the court determined that plaintiff's United States Patent No. 2,470,444 was valid; that the device identified as the "Walker splitter" infringed the patent; that notice not having been given, plaintiff was not entitled to damages; that defendants should be "permanently enjoined and restrained from manufacturing, selling or using the device identified as the 'Walker splitter,' or any other similar device which infringes Patent No. 2,470,444"; and that the device described as a yoke, saddle or halter, the block that may be attached thereto on pivotal points within the terminal ends of the yoke, and the diamond mounted ferrule and wiper used in connection therewith, when not employed in combination with the other elements contained in the device covered by the patent, does not infringe said patent.

Specifically, the decree provides: "It is Ordered and Decreed that the defendants, Window Glass Cutters League of America, Lester Thiebert, Paul L. Kopp, George Berger, and Hubert Gaston, and each of them, and their agents, servants or employees be, and they hereby are, permanently enjoined and restrained from manufacturing, selling, or using, and from aiding, promoting, or encouraging the manufacture, sale or use of the device described in Patent No. 2,470,444, issued May 17, 1949, to George A. Philippe, without the consent of the said George A. Philippe; Provided, however, that this injunctive decree does not include that device which has been described as a yoke, saddle or halter; the block that may be attached thereto on pivotal points within the terminal ends of the yoke, nor the diamond mounted ferrule and wiper which is used in connection therewith, all of which was introduced as defendants' Exhibits No. 1 and 2, unless manufactured, sold or used in connection with and in combination with the device covered by Patent No. 2,470,444."

On March 28, 1951, plaintiff filed a "motion" alleging that defendants, Window Glass Cutters League of America, Hubert Gaston and George Berger, "notwithstanding said injunction, * * * have wilfully continued to infringe said patent and to ignore the order of the United States District Court, Western District of Arkansas, all to the damage of this plaintiff", and praying "(1) That the defendants be fined for civil contempt of the United States decree dated November 22 [26], 1949, in the sum of not less than $10,000.00, and that said fine be awarded to this plaintiff on account of the damage to him. (2) For costs, and for treble damages in the sum of $150,000.00, since the actions of the defendants have been wilful and intentional. (3) For such other and further relief as the court may deem just."

On April 17, 1951, the defendant, Window Glass Cutters League of America, filed a motion to quash service of process and return thereof and to dismiss. The other defendants filed a motion to dismiss and in alternative motion for a more definite statement.

At a hearing held on May 8, 1951, the court ordered that defendants' motion to quash be overruled and that defendants' motion for a more definite statement be sustained.

Thereafter, on July 3, 1951, the plaintiff filed an amended motion, in which he incorporated the original motion by reference, and further alleged:

(Paragraph 2) Shortly after the court rendered its decree the defendant League wrote a letter to the local unit of the League at Fort Smith, Arkansas, stating that said members had permission to use any splitter so long as they did not actually use the Walker splitter [which was held to infringe plaintiff's patent, Conclusion of Law No. 3], and that said members were not to pay too much attention to the "glorified injunction", which was only good in Arkansas; if plaintiff interfered with the use of any splitter but the Walker splitter, Attorney Wilson would prosecute the plaintiff.

(Paragraph 3) On or about December 22, 1949, the defendant League distributed splitters which incorporated practically all of the material points of workmanship included in the Walker splitter, infringing upon plaintiff's patent in the same manner as did the Walker splitter, and members of the League at Harding Glass Company

have been using said infringing splitters ever since said date; that the splitter issued by the defendant League specifically infringes upon plaintiff's patent as to four "claims", to-wit, numbers 1, 2, 4 and 5.

(Paragraph 4) That numerous members of the defendant League are using the Walker splitters in their work at the Pittsburg Plate Glass Company at Henryetta, Oklahoma, and have been doing so since December, 1949.

On July 16, 1951, defendants filed motion to strike the amended motion in its entirety and to dismiss and in alternative to strike specific allegations thereof. Defendants allege that the amended motion should be stricken in its entirety because it did not comply with the court's order of May 8, 1951, granting leave to plaintiff "to file, within a reasonable time, a substituted motion alleging facts which would prima facially show the defendants to be in civil contempt", and that the original motion filed by plaintiff March 28, 1951, should be dismissed because said motion fails to allege any grounds upon which the defendants could be held to be in contempt. In the alternative, defendants move that the allegations of paragraph 2 be stricken because they fail to state grounds upon which civil contempt could be based, and that the allegations of paragraph 4 be stricken as being completely immaterial and as not stating grounds upon which civil contempt could be based.

In the statement in support of the latter motion, defendant, Window Glass Cutters League, states that since the court has construed the original pleading of plaintiff filed on March 28, 1951, as a motion and not a complaint, it concedes the jurisdiction of the court in a civil contempt proceeding, but this result would have been reached in this case regardless of defendant's concession, for while a contempt proceeding is said to be independent, even though civil in nature, it nevertheless arises out of the original suit and may be said to be ancillary thereto.

As to the objections of failure to comply with the court's order of May 8, 1951, the court should disregard any technical defects in this regard, even though the time lapse is hardly "reasonable", and determine from a consideration of both the original and amended motion whether sufficient facts are alleged to state a claim for civil contempt.

By the decree defendants were enjoined from using the device described in plaintiff's patent without his consent, except that the injunction did not cover the yoke, saddle or halter; the block that may be attached thereto on pivotal points within the terminal ends of the yoke, nor the diamond mounted ferrule, unless used in connection with and in combination with the device covered by said patent. In his motions plaintiff alleges that defendants have ignored the injunction and "wilfully continued to infringe said patent"; have advised the League members not to pay too much attention to the "glorified injunction" and to use any splitter so long as they did not actually use the Walker splitter; and have distributed splitters which incorporate practically all of the material points of workmanship included in the Walker splitter and infringe upon plaintiff's patent in the same manner as did the Walker splitter.

The question, therefore, is whether these allegations are a sufficient "accusation" to justify the court in ordering defendants to show cause why they should not be punished as being in contempt of the court's decree?

In view of the somewhat confusing procedure adopted by the plaintiff in this matter, not only to the defendants but to the court, the court feels that a discussion of some of the decisions concerning "contempt" should be helpful in making a correct determination of the question presented here.

Proceedings for contempt are classified as criminal and civil. The line of demarcation between the two is not easily drawn, and certain acts may have the characteristics of both. In such cases, it is often the nature of the relief sought, and granted, that is determinative. Concerning the two classes, Judge Walter H. Sanborn, Court of Appeals for the Eighth Circuit, In re Nevitt, 117 F. 448, 458, quoted in Bessette v. W. B. Conkey Co., 194 U.S. 324, 328, 24 S.Ct. 665, 48 L.Ed. 997, stated: "Pro-

ceedings for contempts are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. (Citing cases.) A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

In Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797, the court stated: "Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co., 194 U.S. [324] 329, 24 S.Ct. 665, 48 L.Ed. [997] 1002. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt

the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court."

In the Gompers case the Court of Appeals of the District of Columbia had held that the proceedings were properly classified as criminal, but the Supreme Court reversed and held that they were civil in nature. On page 451 of 221 U.S., on page 502 of 31 S.Ct., the court said:

" * * * If this had been a separate and independent proceeding at law for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

"But, as we have shown, this was a proceeding in equity for civil contempt, where the only remedial relief possible was a fine, payable to the complainant. The company prayed 'for such relief as the nature of its case may require,' and when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require, and was not entitled to, any compensation or relief of any other character. The present proceeding necessarily ended with the settlement of the main cause of which it is a part. (Citing cases.) The criminal sentences imposed in the civil case, therefore, should be set aside."

In Lamb v. Cramer, 285 U.S. 217, 220, 52 S.Ct. 315, 316, 76 L.Ed. 715, the court said: "It is the purpose of the punishment, rather than the character of the act punished, which determines whether the proceeding is for civil or criminal contempt. (Citing cases.) Even though the particular acts of the petitioner may take the characteristics of both a civil and a criminal contempt, and so may not be classified as exclusively one or the other, see Bessette v. W. B. Conkey Co., 194 U.S. 324, 329, 24 S.Ct. 665, 48 L.Ed. 997, still, under the allegations and prayer of the petition, it would have been competent for the District Court to punish the contempt by its coercive order until Lamb made restitution of the property or to impose a fine, payable to the receiver, compensating for its taking. A

proceeding to secure such relief is civil in its nature."

■ Proceedings for both civil and criminal contempt may be conducted at the same time. In United States v. United Mine Workers of America, 330 U.S. 258, 298, 67 S.Ct. 677, 698, 91 L.Ed. 884, the court said: "If the defendants were thus accorded all the rights and privileges owing to defendants in criminal contempt cases, they are put in no better position to complain because their trial included a proceeding in civil contempt and was carried on in the main equity suit. Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify a court in resorting to coercive and to punitive measures. Disposing of both aspects of the contempt in a single proceeding would seem at least a convenient practice."

Criminal contempts must be prosecuted under the provisions of Rule 42, Rules of Criminal Procedure, 18 U.S.C.A. Summary procedure is authorized in the case of a contempt committed in the actual presence of the court. Rule 42(a). As to criminal contempt except as provided in subdivision (a), there must be reasonable notice and opportunity for a hearing. "The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." Rule 42(b).

Title 18 U.S.C.A. § 401 authorizes a court to punish for contempt and defines the acts for which punishment may be inflicted. Under Sec. 402 any act constituting a contempt which also constitutes a criminal offense under any statute of the United States or under the laws of any State in which the act was committed must be prosecuted as provided in Sec. 3691, and upon demand, the accused is entitled to a jury trial.

■ The procedure to be followed in the case of civil contempt is not so clearly defined. It appears that there should be a pleading directed to the court which sets forth the acts or conduct which allegedly constitute the contempt; there should be reasonable notice to the one charged with the contempt, of the acts or conduct alleged to constitute the contempt; and the one so charged should be given an opportunity to state his defense and be heard. In other words, the basic requirements of due process, notice and hearing, should be followed. The original pleading or "accusation" should conform to the standards set by Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A., for the statement of a claim, wherein it is provided that a pleading "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." In this regard, it is stated in Vol. 3, Barron and Holtzoff, Federal Practice and Procedure, Sec. 1439, p. 320:

"In order to invoke the power of the court to punish the disobedience of its orders as a contempt, the proceeding must be instituted by an accusation, pleading, affidavit or information presented to the court, setting forth the facts constituting the contempt. Such an accusation by analogy to Rule 8 should contain a short and plain statement of the grounds upon which the court's jurisdiction depends and on its face should show facts sufficient to constitute a contempt of court. A person cannot be punished for a contempt not committed in the presence of the court without due and reasonable notice of the proceeding. So, ordinarily, there should issue an attachment, or a citation, rule or order to show cause why the contemner should not be punished or why an attachment or other process should not issue. The proper or permissible form of process varies with the local practice.

"The character of the notice, the requirements of service and return, and the time of hearing are largely within the discretion of the court subject to the requirements of due process of law. A person charged with contempt in the violation of an order of the-

court has the right to file an answer and is entitled to reasonable opportunity to answer and defend."

See, also: 12 Am.Jur. Contempt Sec. 66, et seq.

■ It would not be necessary for the court to find that defendants' alleged acts constituted a violation of the strict letter of the injunction before the court would be justified in holding defendants in contempt. The correct approach to a solution of the matter is aptly stated in John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 128 F.2d 981, 983, as follows: "In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded."

And, in this connection, the Supreme Court in McComb, Wage and Hour Administrator v. Jacksonville Paper Co., 336 U.S. 187, 192, 69 S.Ct. 497, 500, 93 L.Ed. 599, stated:

"Yet if there were extenuating circumstances or if the decree was too burdensome in operation, there was a method of relief apart from an appeal. Respondents could have petitioned the District Court for a modification, clarification or construction of the order. See Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 15, 65 S.Ct. 478, 481, 89 L.Ed. 661. But respondents did not take that course either. They undertook to make their own determination of what the decree meant. They knew they acted at their peril. For they were alerted by the decree against any violation of specified provisions of the Act.

"It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in Maggio v. Zeitz, supra, 333 U.S. [56] at page 69, 68 S.Ct. [401] at page 408 [92 L. Ed. 476]. The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy. Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught."

■ In the light of the above decisions, the court is of the opinion that the allegations in plaintiff's "motion" and "amended motion" constitute a sufficient accusation to justify the court in ordering defendants to show cause why they should not be punished as being in contempt. Certainly, the spirit, if not the strict letter, of the injunction covers "splitters which incorporated practically all of the material points of workmanship included in the Walker splitter, infringing upon plaintiff's patent in the same manner as did the Walker splitter". The facts concerning the alleged distribution and use of such splitters are within the knowledge of the defendants, and they, of course, may answer and allege any facts or assert any defense available to them.

■ It might be observed that "the absence of wilfulness does not relieve from civil contempt". McComb v. Jacksonville Paper Co., supra. Plaintiff alleges that the defendants acted wilfully, and while civil contempt may be established without such proof, it nevertheless might be material and relevant on the issue of whether the "spirit" of the injunction was violated.

The allegations contained in paragraphs 2 and 4 of plaintiff's amended motion, if substantiated, may be material and relevant to the issues, and the court does not feel that those allegations should be stricken at this time.

The court, of course, is not now adjudicating the issue of defendants' alleged contempt. It is simply holding that plaintiff's motions are a sufficient accusation. Defendants should file such answer as they desire within 30 days, and thereafter the matter will be set down for a full hearing and notice of the date of such hearing will

be given. At the hearing the burden of proof will rest upon the plaintiff, and at that time the court will take such action as the facts indicate is proper, it being remembered that "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." McComb v. Jacksonville Paper Co., supra.

An order in accordance with the above, overruling defendants' motion to strike amended motion in entirety and to dismiss and in alternative to strike specific allegations of amended motion and directing defendants to answer within 30 days, should be entered.