The NORTH AMERICAN COAL CORP. et al., Plaintiffs-Appellees,

v.

UNITED MINE WORKERS OF AMERICA et al., Defendants-Appellants.

No. 74–1702.

United States Court of Appeals, Sixth Circuit.

Feb. 25, 1975.

David Clayman, Clayman & Jaffy, Columbus, Ohio, Paul A. Pachuta, Reynoldsburg, Ohio, Joseph A. Yablonski, Steven B. Jacobson, Daniel B. Edelman, Lewis D. Sargentich, Washington, D. C., for defendants-appellants.

Edward H. Laylin, Laylin & Shawan, Columbus, Ohio, Jerry A. Fullmer, James A. Rydzel, Donald B. Redfern, Cleveland, Ohio, for plaintiffs-appellees.

Before EDWARDS and ENGEL, Circuit Judges, and DeMASCIO,* District Judge.

### EDWARDS, Circuit Judge.

This is an appeal from convictions for criminal contempt in a mine strike case where a District Judge had issued a preliminary injunction against "engaging in a strike in violation of the collective bargaining agreement."

The District Judge found two groups of miners, those who did not report for work at North American Coal Corporation's Powhatan No. 5 mine on February 25, 1974, and those who did not report at Powhatan Nos. 3 and 6 mines on March 12 and 13, 1974, to be in criminal contempt and fined over 700 miners $25 apiece. Appellants claim that he did so without proof of service of the injunction, without service of the show cause order on any individual miner, without reciting in the show cause order any specific charges, and with the burden of proof at the contempt hearings placed on the defendants to establish their innocence. (Subsequently the District Judge entered an order as to the first group reducing the fine to $1.00, saying that there was some question about notice.)

Before us appellee North American Coal Corporation defends these procedures by noting that a lawyer appearing for the local unions at the February 26 contempt hearing relative to the first group had said that his co-counsel was representing their membership. Appellee also contends that attorneys for the United Mine Workers of America failed to object to the procedures employed by the court. And more generally, appellee asserts:

> The record clearly demonstrates that each of the appellants were represented by counsel at the contempt hearings, had sufficient notice of the hearings, and were granted all other constitutional and statutory guarantees accorded defendants in petty criminal contempt proceedings.

This is the second appeal in recent cases involving the same District Court, the same company and the United Mine Workers union. The orders here appealed from, however, preceded this court's decision in North American Coal Corporation v. Local 2262, United Mine Workers of America, 497 F.2d 459 (6th Cir. 1974), wherein we dealt with some of the due process requirements in judicial employment of injunctive relief and the contempt power. The facts of the disputes underlying the present appeal are quite different from those involving the former case. The earlier case involved a strike over a grievance between the local union and the company. The present shutdowns were the result of "stranger picketing."

### THE FEBRUARY 25, 1974 CASE

On February 14 and 15 of 1975 pickets from two mines in West Virginia which were on strike appeared before a number

---

* Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

of mines in Ohio owned and operated by North American Coal Corporation. The picket lines resulted in the shutdown of six NACC mines where there was no labor-management dispute. On February 20, 1974, the company filed a complaint in the United States District Court for the Southern District of Ohio seeking a temporary restraining order and injunctive relief against what the union termed a work stoppage and the company called a strike. The complaint named the United Mine Workers of America and its District No. 6, six of its local unions, and eight union leaders as defendants. It alleged that the named local unions were "engaged in representing or acting for the members" of the UMWA employed by plaintiff at particular mines. The complaint did not name any individual miners, except six local union presidents and the president and vice president of District No. 6.

On February 22, 1974, there was a hearing on the complaint just described where an attorney named Clayman appeared for the UMWA and the six local unions named. At the hearing he specifically disclaimed any authorization to represent any individual defendants. The hearing encompassed no testimony but consisted entirely of a colloquy between the court and counsel for the company and the union. Counsel for the UMWA and its locals disavowed any responsibility on their parts for the shutdowns and argued that the employees had not crossed the picket lines set up by the West Virginia miners because of fear of violence. Counsel also declined to "resist the imposition of a restraining order or an injunction."

On the basis of the colloquy referred to above, the District Judge entered "a preliminary injunction" which provided in applicable part as follows:

It is therefore adjudged and decreed that until further Order of this Court the Defendants and each of them who have been served with Summons in this Court, all persons, members of the defendant union, or acting in concert with them, whose names are unknown, who are or have been engaged in organizing, promotion, conducting or prosecuting picketing and/or interference with plaintiffs' employees performing services for plaintiff at any premises of plaintiff and all other to whom knowledge of this Order shall come, be and they are hereby enjoined and restrained as follows:

1) From picketing or engaging in other activities in support of their violation of the collective bargaining agreement between Plaintiffs and Defendants;

2) From engaging in a strike in violation of the collective bargaining agreement between Plaintiffs and Defendants;

3) From refusing and declining to process whatever dispute may exist through the contract dispute arbitration procedures;

4) Defendants District No. 6, United Mine Workers of America, John Guzek, and Arthur Nelms shall notify Local Union 1110 and each other local union within its jurisdiction and each member of Local 1110 and each other member within its jurisdiction of the provisions of this order.

This order of the District Court was entered late Friday afternoon. On Monday, February 25, 1974, five of the affected mines resumed work, but Powhatan No. 5 mine (whose employees were members of Local 1441) did not return to work until the midnight shift on February 26.

On February 25 the District Court issued the show cause order which follows:

It appearing to the Court that persons enjoined therein may be in violation of this Court's Order of February 22, 1974.

Accordingly, it is hereby Ordered that the President, Richard Vargo, and all other elected officers and officials of Local 1441, of the United Mine Workers of America, appear before this Court in Dayton, Ohio, on February 26, 1974, at 3:00 P.M. to show cause why they and the Membership

of Local 1441 should not be held in Contempt of this Court.

Subsequently, at an adjourned hearing on March 4, 1974, the District Judge called upon the defendants to show cause why they should not be held in contempt:

THE COURT: Gentlemen, there is a show cause order, and I believe, Mr. Yoss, this places a burden upon you to go forward with whatever evidence you wish to present.

Defendants' counsel thereupon presented five witnesses. No sworn testimony was presented by the company.

On March 8 the District Judge entered the order which is appealed from herein:

This matter is before the Court pursuant to an Order issued on February 25, 1974, requiring representatives of Local Union 1441 of the United Mine Workers of America to show cause why such representatives and the membership of Local 1441 should not be held in contempt of this Court.

Pursuant to the foregoing Order, a hearing was held in the United States District Court at Dayton, Ohio, at 3:00 p. m. February 26, 1974. At such time counsel for Local 1441 requested a continuance. The request for continuance was granted and the matter was heard in the United States District Court at Columbus, Ohio, on March 4, 1974, at which time the said defendants appeared by counsel, presented evidence and testimony intended to show cause why such defendants should not be held in contempt of this Court.

Based upon such presentation of evidence and testimony, information supplied in open court by counsel, and based upon previous information supplied to this Court at prior hearings herein, the Court determines the following:

1. Local Union 1441 of the United Mine Workers of America is the bargaining agent for coal miners employed by the North American Coal Corporation at its Powhatan No. 5 mine.

2. At no time. from February 20, 1974, through February 25, 1974, was there any dispute pending between the North American Coal Corporation and Local Union 1441. At no time between the aforesaid dates was there any dispute involving the North American Coal Corporation and any local union of the United Mine Workers within District No. 6 of the United Mine Workers of America.

3. On February 22, 1974, this Court issued a preliminary injunction enjoining the members of Local Union 1441 and members of other local unions from "picketing or engaging in other activities in support of their violation of the collective bargaining agreement between plaintiffs and defendants." Such collective bargaining agreement being the National Bituminous Coal Wage Agreement of 1971 which provides for binding arbitration of all disputes.

4. The Order of this Court was filed at 4:17 p. m. on February 22, 1974, and notice of such order was communicated to counsel for the defendants and to the officers of Local 1441 prior to 12:01 a. m. February 25, 1974.

5. At no time subsequent to February 22, 1974, were there pickets present at such Powhatan Mine No. 5 either from Local Union 1441 or from any other local union of the United Mine Workers of America.

6. At 12:01 a. m. February 25, 1974; at 8:00 a. m. February 25, 1974; and at 4:00 p. m. February 25, 1974, members of Local 1441 engaged in activities violative of the aforesaid collective bargaining agreement by refusing to enter the mine, as required by such agreement.

Accordingly, the Court finds that each and every member of Local Union 1441 of the United Mine Workers of America who thus violated the collective bargaining agreement has failed and refused to obey the order of

this Court of February 22, 1974, and is therefore in contempt thereof. Each of such persons is hereby fined the sum of Twenty-five ($25.00) Dollars. The parties are directed to proceed as follows:

1. The President or Financial Secretary of Local 1441 shall forthwith transmit to this Court the names and addresses of every member of such local as of 12:01 a. m. February 22, 1974.

2. The plaintiff North American Coal Corporation shall forthwith advise the Court which members of Local 1441 did in fact enter the mine at either 12:01 a. m., 8:00 a. m., or 4:00 p. m., February 25, 1974, for purposes of working therein.

3. Each member of such local who did not enter Powhatan No. 5 mine on February 25, 1974, for purposes of working therein shall by April 1, 1974, pay to the Clerk of this Court the sum of Twenty-five ($25.00) Dollars as a fine for contempt of court.

4. The President and Financial Secretary of such union are hereby authorized to collect the fines of Twenty-five ($25.00) Dollars and transmit them to the Clerk of this Court by April 1, 1974, together with a list of those union members whose fines have been collected.

The defendants are directed to read this Order in full at the next regular membership meeting of Local Union 1441 and to post a copy thereof at such meeting place. Plaintiff is directed to post a copy of this Order on each of the bulletin boards at its Powhatan No. 5 mine. Plaintiff is likewise directed to distribute to each member of defendant union a copy of this Order at the time such members receive their next paycheck.

It is so ORDERED.

## THE MARCH 12–13, 1974 CASE

On March 12 and 13 various of North American Coal Corporation's mines were picketed by striking miners from an Ohio mine owned by Oglebay-Norton Company. This resulted in shutting down NACC's Powhatan No. 3 mine (UMWA Local Union 2262) and Powhatan No. 6 mine (UMWA Local Union 1810) on certain shifts on the two days concerned. The District Judge entered a show cause order (similar in all relevant respects to that of February 26, 1974, as quoted above). A show cause hearing (similar in all relevant legal respects to that of March 4, 1974) was then held on March 14, 1974. On April 3 the District Judge entered another contempt order which is identical in all major respects to the contempt order of March 8, 1974, which we have quoted above.

## HOLDING

■■■ The equity power of the District Court to grant injunctive relief and enforce its orders by contempt proceedings is potent, indeed. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). And as the District Judge recognized in this case, the Supreme Court has squarely authorized employment of these measures to restrain strikes in violation of labor-management contracts construed to contain mandatory grievance arbitration clauses. See Boys Market, Inc. v. Retail Clerks' Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Nonetheless, the awesome powers of injunction and contempt are hedged by constitutional, statutory and judicial restrictions so as to guarantee the court's adherence to due process and to protect individuals from arbitrary use of such powers. In this case the essentials of due process are singularly absent.

We shall deal first with the contempt convictions of all appellants other than the eight named union officers. The record we have examined shows that over 700 miners (the record does not reveal precisely how many) have been found guilty of criminal contempt and fined. It further shows that this was

accomplished without 1) proof of service of the injunction concerned upon any of those convicted, 2) without proof of service of the contempt citation upon any of those convicted, or even naming them in the proceedings, 3) without service of a statement of the facts constituting the alleged contempt, 4) without the individual defendants being present or represented in the courtroom, and 5) with the burden of proof of innocence thrown upon the defendants.

With this much established, we find no need to respond to still other claims of substantive error which may or may not prove meritorious. The contempt adjudications of March 8 and April 3 as to local union members cannot stand.

■ There is no such thing in the law of these United States as a class action criminal proceeding wherein unnamed defendants are tried in absentia through representatives.

The fundamental authorities for our holding in this case are, of course, the due process clause of the Fifth Amendment and the procedural guaranties of the Sixth Amendment to the United States Constitution. They read:

No person shall be . . . deprived of life, liberty, or property, without due process of law; . . . U.S.Const. amend. V.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence. U.S.Const. amend. VI.

In an early labor case, the Supreme Court spelled out these rights:

If then, as the court of appeals correctly held, the sentence was wholly punitive, it could have been properly imposed only in a proceeding instituted and tried as for criminal contempt. The question as to the character of such proceedings has generally been raised, in the appellate court, to determine whether the case could be reviewed by writ of error or on appeal. Bessette v. Conkey, 194 U.S. 324 [24 S.Ct. 665, 48 L.Ed. 997]. But it may involve much more than mere matters of practice. For, notwithstanding the many elements of similarity in procedure and in punishment, there are some differences between the two classes of proceedings which involve substantial rights and constitutional privileges. Without deciding what may be the rule in civil contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself. Boyd v. United States, 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]; United States v. Jose [C.C.] 63 F. 951; State v. Davis, 50 W.Va. 100 [40 S.E. 331]; King v. Ohio Ry. [C.C.] 7 Biss. 529 [Fed.Cas.No.7,800]; Sabin v. Fogarty [C.C.] 70 F. 482, 483; Drakeford v. Adams, 98 Ga. 724, 25 S.E. 833.

Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911).

The Supreme Court has, however, been active in spelling out the application of the due process clause in many situations of possibly lesser moment than those involved in criminal contempt cases.

*Probation revocation*—Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

*Parole revocation*—Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

*Welfare benefit terminations*—Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

*Repossession*—Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

*Employment termination*—Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

*Driver's license suspension*—Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

*Termination of parental rights*—Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

*Prison discipline*—Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

*Prejudgment wage garnishment*—Snidach v. Family Financial Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

More directly in point, as we pointed out in North American Coal Corp. v. Local Union 2622, UMWA, *supra* 497 F.2d at 465–66, is Rule 42(b) of the Federal Rules of Criminal Procedure:

**(b) Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. Fed. R.Crim.P. 42(b).

As we have noted, no such notice as is called for by the rule was provided to any of the nonofficer members convicted. It is equally clear that as to these members there was no compliance with Rule 42(b)'s flat requirement that "[the notice] shall state the essential facts constituting the criminal contempt charged and describe it as such."

Further, as we pointed out in *North American Coal Corporation* concerning burden of proof:

"Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case (Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767) requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). In this regard the Eighth Circuit has held:

"Rule 42(b) does not relieve the prosecution of its burden to establish guilt beyond a reasonable doubt. The order to show cause is merely a method of serving notice of the alleged violation of an order. United States v. United Mine Workers, 330 U.S. 258, 296–297, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The alleged contemnor is at all times clothed with the presumption of innocence and the Government has the continuing burden of proving his guilt. Yates v. United States, 316 F.2d 718 (10th Cir. 1963); James v. United States, 275 F.2d 332, 335 (8th Cir.), cert. denied, 362 U.S. 989, 80 S.Ct. 1077, 4 L.Ed.2d 1022 (1960); Nilva v. United States, 227 F.2d 74, 80 (8th Cir. 1955), aff'd, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957)." In re Van Meter, 413 F.2d 536, 538 (8th Cir. 1969).

North American Coal Corp. v. Local 2262, United Mine Workers of America, 497 F.2d 459, 466 (6th Cir. 1974).

█ As to the eight named union officers (some of whom were served and present in court) their contempt convictions were also based on contempt notices which failed to state "the essential facts" and upon proceedings wherein they as the accused were required to bear the burden of proof of their innocence.

Reversed. The judgments of conviction are vacated. Costs to appellants.