**CONSOLIDATION COAL COMPANY,**
**Plaintiff-Appellee,**

**v.**

**LOCAL UNION NO. 1784, UNITED MINE WORKERS OF AMERICA, et al., Defendants-Appellants.**

**No. 74–1665.**

United States Court of Appeals,
Sixth Circuit.

April 25. 1975.

John W. Kenesey, Clayman & Jaffy, Columbus, Ohio, Paul Pachuta, Reynoldsburg, Ohio, Joseph A. Yablonski, Lewis Sargentich, Daniel B. Edelman, Steven Jacobson, Washington, D. C., for defendants-appellants.

John W. Edwards, Lane, Alton & Horst, Columbus, Ohio, Raymond Hasley, Anthony J. Polito, Rose, Schmidt & Dixon, Daniel L. Stickler, Roger Curran, Edwin J. Strassburger, Pittsburgh, Pa., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The district court on April 19, 1974, found "those members of Local Union No. 1784 who have refused to enter Oak Park Mine No. 7 since 4:00 p. m. April 16, 1974" in contempt for violating the court's injunction of January 31, 1974, against

> "committing, doing, uttering, writing or communicating any act, word or deed written, spoken or performed, which is intended, designed or calculated to induce, persuade, order, cause or bring about the failure or refusal of any member of defendant Local 1784 to report for work or to work or to cause or bring about a strike at plaintiff's mine."

Approximately 235 miners were found to be in contempt for missing work shifts between 4 p. m. April 16, 1974, and entry of the contempt order at 3:57 p. m. April 19, 1974, and each was fined five dollars ($5.00) per missed shift. Sixty miners were fined twenty-five dollars ($25.00) each for missing the shift beginning at 4 p. m. April 19, 1974.

On appeal, the miners claim that the district court found them in contempt without according them due process of law and that insufficient evidence underlay the findings of contempt. We agree.

Plaintiff-appellee's motion to hold hearing in contempt of permanent injunction and the district court's order to show cause were served only on five officers of Local 1784. Because "what

process is due," Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), varies from context to context, the precise nature of the findings of contempt should be determined. Despite appellee's claim that Local 1784, rather than its members, was found in contempt, the record clearly indicates that the district court found the members in contempt. The contempt order found "those members [missing shifts] . . . in contempt," fined "such member[s]," and directed union officials to collect the fines "from each and every member." We agree, however, with appellee's characterization of the contempt as "civil," rather than "criminal," because the "character and purpose" (Shillitani v. United States, 384 U.S. 364, 369, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)) of the fines was to coerce the miners' return to work rather than to punish the miners for past misconduct. In North American Coal Corp. v. United Mine Workers of America, 512 F.2d 238 (6th Cir. 1975) (contempt characterized as criminal), miners who had already returned to work were "punished" for participating in no longer active work stoppages. Conversely, the miners found in contempt in the instant appeal had been involved in a work stoppage right up to the finding of contempt; in fact, the work stoppage continued for at least one shift beyond the finding of contempt. That the miners were found in contempt for missing several shifts prior to the finding of contempt does not convert civil into criminal contempt as long as the "character and purpose" of such finding "is to coerce compliance with a court order, usually for the benefit of an injured suitor." Kutner, Contempt Power: The Black Robe—A Proposal For Due Process, 39 Tenn.L.Rev. 1, 8 (1971). *See* Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946).

Had the contempt been criminal, such finding obviously would have been invalid in the absence of notice and an opportunity to be heard. *North American Coal, supra;* Brotherhood of Locomotive Firemen & Enginemen v. United States, 411 F.2d 312 (5th Cir. 1969). Unfortunately, what procedures due process requires for a finding of civil, rather than criminal, contempt may be less clear. *See* Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Philippe v. Window Glass Cutters League, 99 F.Supp. 369, 374 (W.D.Ark.1951).

> "Like any civil litigant, a civil contemnor is . . . clearly entitled to those due process rights, applicable to every judicial proceeding, of proper notice and an impartial hearing with an opportunity to present a defense . . .. Certainly the history of contempt litigation, especially in regard to labor disputes, prescribes extreme care and insistence on the full indicia of due process in contempt cases . .." Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. R., 127 U.S.App.D.C. 23, 380 F.2d 570, 581–582 (D.C.Cir.), cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967).

*Accord, Shillitani, supra,* 384 U.S. at 371 n. 7, 86 S.Ct. 1531, 16 L.Ed.2d 622; United States v. Boe, 491 F.2d 970 (8th Cir. 1974); Gialde v. Time, Inc., 480 F.2d 1295, 1300 (8th Cir. 1973); Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946); *Philippe, supra,* 99 F.Supp. at 374; Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 243 (1971). *See* United States v. Hawkins, 501 F.2d 1029, 1031 (9th Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974). Between the filing at 2:40 p. m. April 17, 1974, of appellee's motion for a contempt hearing and the hearing itself at 9 a. m. April 19, 1974, appellee neither initiated nor requested service of the motion and show cause order on the miners, and consequently none was made. The miners, in sum, did not receive any notice, much less "notice reasonably calculated, under the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See* Eisen v. Carlisle & Jacque-

lin, 417 U.S. 156, 94 S.Ct. 2140, 2150–2152, 40 L.Ed.2d 732 (1974); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). We do not imply, however, that, with a costly and illegal work stoppage in process, the strikers must be personally served; the "unhurried deliberateness" of personal service may well further delay compliance with a no-strike injunction. *Brotherhood of Locomotive Firemen & Enginemen, supra,* 411 F.2d at 319. We only hold that the lack of service in any form on the miners violated due process.

■ Five union officials, however, were served with the motion to hold hearing and the show cause order. They were served, however, in their capacities as union officials. Had they been found in contempt in such capacities, assuming sufficient evidence supporting those findings, those findings would be sustained. The district court, however, found the officials in contempt for personally missing work shifts rather than for their activities as union officials. Consequently, those findings of contempt must be reversed because the process served on them warned only of contempt for their union, rather than their purely employee, activities.

■ We further conclude that insufficient evidence underlay the findings of contempt. Appellee had the burden of proving a violation of the injunction.

" . . . by more than a mere preponderance of the evidence. Some courts have indicated the petitioner must produce 'clear and convincing evidence.' Other courts have indicated that the violation must be shown by 'a clear preponderance of the evidence.' Some of these courts and still others have indicated that 'a degree of certainty is required which leaves no fair ground of doubt' as to the violation of the court's order. Whatever the precise language . . . the petitioner in a civil contempt proceeding must overcome a heavy burden of proof." Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182,

189–190 (3rd Cir. 1961), rev'g 189 F.Supp. 737 (E.D.Pa.1960).

*Accord,* Kansas City Power & Light Co. v. NLRB, 137 F.2d 77, 79 (8th Cir. 1943). *See, e. g.,* NLRB v. Alamo Express, Inc., 395 F.2d 481, 482 (5th Cir. 1968) ("clear and convincing evidence"); Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc., 341 F.2d 101, 102 (2d Cir. 1965) ("clear and convincing proof").

■ On appeal, appellee admits that it had the burden of establishing the contempt "by clear and convincing evidence." Appellee produced no witnesses at the contempt hearing, though it obtained a concession from the union's attorney that a work stoppage was in process. The district judge thereupon placed the burden of rebutting an inference of contempt on the purported contemnors. Had the injunction prohibited work stoppages, placing such burden probably would have been proper. Yet the injunction prohibited only the "induc[ing], persuad[ing], order[ing] or bring[ing] about" work stoppages, rather than the participating in work stoppages in itself. In sum, there was "not a line of testimony that any one of those found guilty" ever induced, persuaded, ordered or brought about the work stoppage. Compare North American Coal Corp. v. Local 2262, United Mine Workers, 497 F.2d 459 (6th Cir. 1974), and *Schauffler, supra,* 292 F.2d at 189, with *Philippe, supra,* 99 F.Supp. at 375. The only witness at the contempt hearing, the president of Local 1784, in fact, testified uncontradictedly that he had ordered the miners back to work. Appendix at 319.

Reversed.